Baldwin County, Frank Santa Cruz, and Kevin Cowper (hereinafter collectively referred to as "the defendants") appeal from the trial court's denial of their summary-judgment motion. This Court granted the defendants' petition for a permissive appeal pursuant to Rule 5, Ala.R.App.P., in order to determine whether the trial court has jurisdiction over the present action. We conclude that it does not; therefore, we dismiss this appeal.
Facts and Procedural History
Palmtree Penthouses, Ltd., owns approximately 6.6 acres of land in Fort Morgan. In 1984, Palmtree recorded a map of the land in the probate office of Baldwin County. On the map, or plat, the 6.6 acres were divided into a 98-lot subdivision; each lot was 16 feet x 60 feet.[1] The recorded plat contains "Certificate[s] of Approval" signed by the county engineer, an officer from the county health department, and the chairman of the planning commission, indicating that Palmtree had received approval from those persons and agencies for the proposed division of the property into 98 lots. Although Palmtree initially planned to develop multifamily housing on the land, it never did so.
In 1993, Baldwin County adopted a zoning ordinance. Under the ordinance the area in which Palmtree's property is located was zoned as "R-1" or single-family residential. In 1994, Palmtree applied to the Baldwin County Commission, requesting that its property be rezoned to allow multifamily housing. The Baldwin County Commission denied Palmtree's request, but stated that Palmtree's subdivision plat came within the "grandfather" clause in the 1993 zoning ordinance.[2] Palmtree did not appeal this ruling. Palmtree alleges that in 1997, Frank Santa Cruz, the Baldwin County building official, and Kevin Cowper, the Baldwin County zoning administrator, told an appraiser and potential purchasers of Palmtree's property that the property was subject to the 1993 zoning ordinance and that no building permits would be issued for the development of the property until the land was replated in accordance with the 1993 zoning ordinance.[3] Cowper denies making such statements.
On April 16, 1998, Palmtree sued Frank Santa Cruz and Kevin Cowper, in their *Page 605 
official capacities, and Baldwin County, requesting a writ of mandamus or declaratory relief that would allow Palmtree to obtain a building permit and to develop its land as it was platted and approved in 1984. On August 5, 1998, Palmtree amended its complaint to add allegations of breach of express and implied contracts, inverse condemnation, and due-process violations under the Alabama Constitution, and alleging that it was entitled to relief under the doctrines of promissory and equitable estoppel. The defendants filed a motion to dismiss Palmtree's complaint, as amended. The trial court dismissed Palmtree's inverse-condemnation claims against Santa Cruz and Cowper, but denied the motion as to all other counts.
On January 26, 2000, the defendants filed their first motion for a summary judgment. The trial court denied the motion on February 8, 2000. They then filed a motion to alter, amend, or vacate the order, and the trial court entered a summary judgment for the defendants as to Palmtree's first count requesting a writ of mandamus or declaratory relief. On July 19, 2000, the defendants filed a second motion for summary judgment as to the remaining counts against them. The trial court denied the motion on March 2, 2001. The defendants filed a motion asking the trial court to provide the statement as required by Rule 5, Ala.R.App.P., to seek permission to appeal the March 2, 2001, interlocutory order. The trial court provided the statement on March 9, 2001, and this Court granted the permissive appeal on May 16, 2001.
Analysis
The defendants argue that the trial court should have entered a summary judgment in their favor as to all of Palmtree's claims because, they argue, the trial court had no jurisdiction over this case. Specifically, the defendants contend that Palmtree's claims are not yet ripe for adjudication because Palmtree has not requested and been denied the right to build its proposed project on the land as it was platted in 1984. Therefore, the defendants argue, there is no justiciable controversy in this case.[4]
In order for a court to obtain jurisdiction over an action, there must be a live controversy between the parties. See Smith v. Alabama Dry Dock Shipbuilding Co., 293 Ala. 644, 649, 309 So.2d 424, 427 (1975) ("There must be a bona fide existing controversy of a justiciable character or the court is without jurisdiction."). Matters that may or may not occur in the future do not present an existing controversy to a plaintiff.293 Ala. at 651, 309 So.2d at 429. Therefore, a plaintiff fails to invoke the jurisdiction of a court by alleging facts that merely anticipate a possible controversy in the future. Id.
 "This Court, in addressing a variety of causes of action, has consistently held that if the plaintiff has suffered no harm, loss, injury, or damage, then the plaintiff has no claim to be adjudicated. See Ford Motor Co. v. Rice, 726 So.2d 626 (Ala. 1998) (holding that the owner of a sport-utility vehicle could not maintain an action alleging fraudulent suppression *Page 606 
based solely on the risk that her vehicle might roll over because of an alleged defect); Pfizer, Inc. v. Farsian, 682 So.2d 405 (Ala. 1996) (holding that one who had received a manufactured heart valve could not recover damages based on speculation that the valve might fail); Luken v. BancBoston Mortgage Corp., 580 So.2d 578 (Ala. 1991) (holding that the plaintiffs had no claims presently adjudicable, because the plaintiffs only anticipated being required to make payments in the future); and Smith v. Alabama Dry Dock Shipbuilding Co., 293 Ala. 644, 309 So.2d 424 (1975) (holding that a corporation was not entitled to a declaratory judgment concerning a retirement plan that might or might not be implemented)."
Williamson v. Indianapolis Life Ins. Co., 741 So.2d 1057, 1060-61 (Ala. 1999).
In Luken v. BancBoston Mortgage Corp., 580 So.2d 578 (Ala. 1991), James and Gertrude Luken purchased a house and entered into a loan with BancBoston Mortgage Corporation; the loan was secured by a mortgage on the property. The Veterans Administration (now the Department of Veterans Affairs) guaranteed BancBoston payment of up to 60% of the amount of the loan. After living in the house and making the mortgage payments for six years, the Lukens sold the house to Alexander Leps. Leps assumed the mortgage, but the Lukens remained personally liable on the loan in the event Leps failed to make timely payments.
Shortly after Leps purchased the house and began making the payments, the house, which was insured by Allstate Insurance Company, was partially destroyed by fire. Allstate issued a check representing the insurance proceeds jointly to Leps and to BancBoston. BancBoston released a portion of the funds to Leps for restoration of the house. Leps then abandoned the property and ceased making payments on the loan. The property was sold at a foreclosure sale. After the foreclosure sale, BancBoston sought and received from the Veterans Administration a deficiency payment, representing the remaining amount owed on the loan. After making the deficiency payment to BancBoston, the Veterans Administration notified the Lukens of their obligation to reimburse it for the deficiency payment in the event Leps failed to do so.
The Lukens then applied to the Veterans Administration for a waiver of payment, seeking to be relieved from the obligation to reimburse the Veterans Administration for the amount it had paid BancBoston. The application was initially denied, but the Lukens later received notice that their application had been certified for appeal and was under consideration for a final decision. The Lukens then sued BancBoston, claiming that BancBoston had wrongly paid a portion of the insurance funds to Leps and that, as a result, the Lukens were harmed to the extent they had to reimburse the Veterans Administration. BancBoston moved for a summary judgment, arguing that because the Lukens' application for a waiver of payment was still under consideration by the Veterans Administration and because they were not yet required to make the deficiency payment to the Veterans Administration, they had suffered no damage. The trial court entered a summary judgment in favor of BancBoston.
The Lukens appealed to this Court, which determined that the trial court had no jurisdiction over the case, stating:
 "Since [receiving notice that their application was pending on appeal], the Lukens have received no final decision from the Veterans Administration in this *Page 607 
matter, nor have they made a deficiency payment to the Veterans Administration. As it stands at this time, it is not certain that they will be required to make the payment at all. We hold that the mere allegation that the Lukens anticipate that they will be required to pay the deficiency to the Veterans Administration in the future is not sufficient to invite a judicial declaration of their rights."
580 So.2d at 581. Because the Lukens alleged a mere anticipation of a future controversy, they failed to invoke the jurisdiction of the court. Consequently, the trial court's judgment in their case was void, and this Court dismissed the Lukens' appeal.
In the case before us, all of Palmtree's claims and the injuries it alleges it has suffered are based upon an assumption that it will not be allowed to build its project on its property in accordance with the plat as it was recorded in 1984. The record, however, does not demonstrate that Palmtree has ever received final or official notification that it cannot develop its property in accordance with the recorded plat. The zoning regulations for Baldwin County provide that any person who plans to develop land must obtain a land-use certificate from the zoning administrator before a building permit or any other permit or license can be issued. In order to obtain a land-use certificate, an applicant must fill out an application form and submit it to the zoning administrator, along with a site plan drawn to scale. The zoning administrator may circulate the application to the building official, the county engineer, and the coastal-program director for approval and comment. The certificate is then issued or denied within seven days.
It is undisputed that Palmtree never applied for a land-use certificate or for any other permit or license to develop the land. Furthermore, Kevin Cowper, in his deposition testimony, denied that he told anyone that building permits would not be issued for Palmtree's subdivision unless the land was replatted.[5] In fact, on June 8, 2000, Kevin Cowper, acting in his capacity as zoning administrator, wrote a letter to a representative of Palmtree, which stated, in pertinent part:
 "Therefore, the development may be constructed in accordance with the plat approved by the Planning Commission on February 15, 1984, and recorded on April 4, 1984. Construction of the development would, however, be subject to the nonconforming provisions of the Zoning Regulations (Article 29) since the use and many of the area and dimensional features of the development do not conform to the provisions of the Zoning Regulations.
 "In order to obtain a building permit to construct the development you must first obtain a land use certificate. The procedure and requirements for obtaining a land use certificate are outlined in Section 30.2 of the Zoning Regulations. I have enclosed a land use certificate application form and major project checklist for your use.
 "As far as I can tell, the February 15, 1984 Planning Commission approval included the following standards as illustrated on the approved plat and included in the meeting minutes:
"Use: townhomes
 "Density 95 units on 6.6 acres more or less= 14.4 units per acre more or less
"Building Height in Stories 2 stories
"Building Height in Feet not shown
"Distance Between Buildings as shown on plat
"Front Yard 0 feet
"Rear Yard 0 feet
"Side Yard 0 feet
"Lot Coverage 100%
"Lot Width as shown on plat
"Lot Size as shown on plat *Page 608 
 "We will review the development based upon these previously approved standards. Where there are no standards explicitly approved by the Planning Commission we will defer to the Zoning Regulations."
In closing the letter, Cowper also discussed Palmtree's alternatives for developing the land, should it decide not to develop the land in accordance with the 1984 plat.
The only evidence in the record offered in support of Palmtree's claims against the defendants is the deposition testimony of Samuel McKerall. McKerall is an attorney who represented Palmtree from 1994 until 1999.[6]
In his deposition testimony, McKerall stated that the first time he discussed the zoning of Palmtree's land as R-1 with Santa Cruz, Santa Cruz pointed out that the zoning ordinance contained a grandfather clause. McKerall further stated "I remember thinking [the grandfather clause] solved the problem. Later I decided that it didn't solve the problem." (R. 109.) It was after McKerall determined that the grandfather clause did not solve Palmtree's zoning problem that Palmtree petitioned the Baldwin County Commission to rezone Palmtree's land. When McKerall was questioned as to whether anyone representing Baldwin County had actually told him that the project could not be constructed as platted, McKerall initially answered "no." McKerall then stated that he was sure that either Frank Santa Cruz or Kevin Cowper had told him that the project could not be constructed in accordance with the plat. Later, however, McKerall admitted that he was not sure whether either Santa Cruz or Cowper had told him that the land could not be developed in accordance with the plat.
Palmtree's action against the defendants is not ripe for adjudication because there is presently no live justiciable controversy that would give the courts jurisdiction over this case. Palmtree's breach-of-contract claims against the defendants for not honoring the grandfather clause of the zoning ordinance, Palmtree's allegations that the defendants are estopped from enforcing the zoning ordinance, and Palmtree's claims that its property has been "taken" by the county without just compensation, are all based upon the assumption that Palmtree will be denied a land-use certificate and all of the ensuing permits necessary to develop its land in accordance with the 1984 plat. There is no evidence in the record indicating that Baldwin County, through its officials or otherwise, denied Palmtree the opportunity to commence its project as that project was approved in 1984. Palmtree's allegations do nothing more than demonstrate its anticipation that there may be a controversy in the future. As of the filing of this action, Palmtree has not in any way been denied the right to develop its property in accordance with the plat as it was recorded in 1984; because there has been no denial, Palmtree has not yet suffered an injury.
Because Palmtree failed to invoke the jurisdiction of the trial court, any order entered by the trial court is void. Accordingly, we dismiss this appeal.
APPEAL DISMISSED.
Moore, C.J., and See, Johnstone, and Harwood, JJ., concur.
[1] The narrow lots were apparently intended to accommodate town houses.
[2] The 1993 zoning ordinance contains the following "grandfather" clause:
 "6.010 Any use of buildings or land existing on the date of adoption of this Ordinance and not in compliance with its provisions shall be allowed to continue as a non-conforming use. Any land development projects in Baldwin County within the territorial and legal authority of this Ordinance that are not located in a zoning use district designated for their intended use may be permitted to continue provided that:
 "6.0101 The project was under construction prior to the date of the adoption of this Ordinance. For the purposes of this Section, under construction shall mean that a legal building or construction permit has been issued and that actual construction has been or will be started within the initial period of validity of the permit, exclusive of any time extensions, or that an application for a permit has been submitted to the Alabama Department of Environmental Management. All such applications or permits resulting, if any, shall not be transferable.
 "6.0102 The project complies in other aspects with the requirements of this Ordinance for districts in which similar uses are permitted.
 "6.0103 The developer complies with other conditions that may be required by the Planning Commission due to the unique circumstances of the land."
[3] These are the facts as alleged by Palmtree in its original and amended complaints.
[4] Palmtree contends that the defendants have not preserved the issue of ripeness for review because, it says, they failed to present this argument to the trial court. A review of the record, however, shows that Palmtree's contention is incorrect. Furthermore, "'[s]ubject matter jurisdiction [cannot] be conferred by agreement nor can it be waived. Indeed, it is incumbent upon the court to notice [a lack of] subject matter jurisdiction sua sponte.'" Stringfellow v. State Farm Life Ins.Co., 743 So.2d 439, 441 (Ala. 1999), quoting International Longshoremen'sAss'n v. Davis, 470 So.2d 1215, 1216 (Ala. 1985). Therefore, jurisdictional issues may be raised at any stage of the proceedings.
[5] The record contains no testimony by Frank Santa Cruz concerning this matter.
[6] Mr. McKerall withdrew from his representation of Palmtree when he realized that his testimony would be necessary in this litigation. *Page 609