MENDHEIM, Justice.
*841 Aurora Healthcare, Inc., and Aurora Cares, LLC, d/b/a Tara Cares (hereinafter referred to collectively as "Aurora"), and Birmingham Nursing and Rehabilitation Center East, LLC ("Birmingham East") (Aurora and Birmingham East are hereinafter referred to collectively as "the defendants"), appeal from the Jefferson Circuit Court's denial of their motion to compel arbitration of an action filed against them by Sharon Ramsey, as administratrix of the estate of her mother, Mary Pettway, who is deceased. Ramsey cross-appeals the Jefferson Circuit Court's decision denying her motion for a partial summary judgment concerning the validity of the subject arbitration agreement. We dismiss both the appeal and the cross-appeal.
I. Facts
This is the second time the circuit court's ruling on the defendants' motion to compel arbitration has come before this Court. See Aurora Healthcare, Inc. v. Ramsey, 83 So.3d 495, 497 (Ala. 2011) (" Aurora Healthcare I"). In Aurora Healthcare I, we reversed the circuit court's order denying the defendants' motion to compel arbitration. Understanding the arguments of the parties and the disposition of these appeals requires more factual context than was provided in Aurora Healthcare I.
On or about November 7, 2003, Mary Pettway, then 75 years old, was discharged from the hospital at the University of Alabama at Birmingham ("UAB Hospital"). On the same day, Pettway was admitted to a nursing home owned and operated by the defendants. During Pettway's admission to the nursing home, Ramsey met with Faye Linard, an administrative assistant, who presented Ramsey with an admissions agreement that included several documents.[1] Ramsey alleges that Linard explained the documents to her, including a "Resident and Facility Arbitration Agreement." Ramsey refused to sign the arbitration agreement; signing it was not a prerequisite to Pettway's admission to the nursing home.
Pettway developed an infection, and, as a result, she was returned to UAB Hospital on November 16, 2003. Pettway was readmitted to the nursing home on November 26, 2003. Ramsey stated in an affidavit that late in the evening on November 26, 2003, she received a telephone call from the admissions office at the nursing home and was asked to return to the nursing home because "there were some documents that I had not signed the first time my mother was admitted and I needed to come in to sign them." Ramsey met with Birmingham East employee Brandi Harrison, who, Ramsey testified, told her that the documents were ones that "had not been completed the first time" her mother was admitted to the nursing home. Ramsey testified that Harrison did not explain each document to Ramsey. Ramsey further alleges that Harrison did not give her the opportunity to review each document, but "simply held up the corners of each document and showed me where to sign." Ramsey stated that she was not told *842 that one of those documents was an arbitration agreement.
An arbitration agreement containing a signature with the name "Sharon Ramsey" dated November 26, 2003, appears in the record. Ramsey contends that the signature is not authentic, and she asserts that, even if it is genuine, the signature was obtained by misrepresentation. In pertinent part, the arbitration agreement provides:
"This ARBITRATION AGREEMENT ('Agreement') is executed by Birmingham East (the 'Facility') and Mary Pettway ('Resident'[ ] or 'Resident's Designated Representative', hereafter collectively referred to as 'Resident') in conjunction with the agreement for admission and for the provision of nursing facility services (the 'Admission Agreement') by the Facility to the Resident. The parties to this Agreement acknowledge and agree that upon execution, this Agreement becomes part of the Admission Agreement and that the Admission Agreement evidences a transaction in interstate commerce governed by the Federal Arbitration Act. It is understood and agreed by the Facility and the Resident that any and all claims, disputes, and controversies (hereafter collectively referred to as a 'claim' or collectively as 'claims') arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration ....
"This Agreement to arbitrate includes, without limitation, or refund for services rendered to the Resident by the Facility, violations of any right granted to the Resident by law or by the Admission Agreement, breach of contract, fraud or misrepresentation, negligence, gross negligence, malpractice, or claims based on any departure from the accepted medical or health care or safety standards, as well as any and all claims for equitable relief or claims based on contract, tort, statute, warranty, or any alleged breach, default, negligence, fraud misrepresentation, suppression of fact, or inducement....
"It is the intention of the parties to this Agreement that it shall inure to the benefit of and bind the parties, their successors, and assigns, including without limitation the agents, employees and servants of the Facility, and all persons whose claim is derived through or on behalf of the Resident, including any parent, spouse, sibling, child, guardian, executor, legal representative, administrator or heir of the Resident. The parties further intend that this Agreement is to survive the lives or existence of the parties hereto.
"....
"... If not rescinded within thirty days, this Agreement shall remain in effect for all subsequent stays at the Facility, even if the Resident is discharged from and readmitted to the Facility."
On November 28, 2003, Pettway was again transferred to UAB Hospital due to a worsening infection. Pettway was readmitted to the nursing home again on December 3, 2003. Ramsey was not asked to sign any additional documents for this third admission. Pettway died at the nursing home on December 10, 2003.
After her appointment as administratrix of Pettway's estate, Ramsey filed a complaint in the Jefferson Circuit Court on November 3, 2005, asserting against the defendants "a variety of statutory and common-law claims allegedly arising from Pettway's death, including a wrongful-death claim." 83 So.3d at 497. On November *843 3, 2006, the defendants filed a motion to compel arbitration. The circuit court denied the motion on June 23, 2010, finding that the defendants had waived their right to invoke arbitration based on their delay in asserting it.
In the first appeal, this Court reversed the circuit court's order, concluding that Ramsey was not prejudiced by the defendants' delay in filing their motion to compel arbitration. In remanding the case, the Court stated:
"We are unable to determine, however, whether this case is due to be arbitrated. The parties dispute whether Ramsey's signature on the arbitration agreement is authentic or forged, whether the agreement, signed subsequent to Pettway's initial admission to the nursing home, operates retroactively, and whether [Aurora], [a] nonsignator[y] to the arbitration agreement, can enforce the agreement. The circuit court did not provide findings of fact or conclusions of law as to any of those issues but denied the defendants' motion to compel solely on the basis of waiver.
"Accordingly, we reverse the circuit court's June 23, 2010, order denying the defendants' motion to compel arbitration. We remand the cause for that court to consider the motion to compel arbitration in light of the issues associated with the validity and scope of the arbitration agreement proffered by the defendants."
83 So.3d at 502-03.
Following remand, on January 27, 2012, the defendants filed in the circuit court a "Supplemental Brief and Renewed Motion to Compel Arbitration." On February 28, 2017, Ramsey filed a "Partial Motion for Summary Judgment" in which she sought a determination that the arbitration agreement was invalid based on fraud or that it was unenforceable by Aurora because Aurora was not a signatory to the arbitration agreement.
On March 15, 2017, the circuit court entered an order ruling upon the defendants' motion to compel arbitration and Ramsey's motion for a partial summary judgment. Specifically, the order examined three issues:
"1. Is the purported November 26, 2003, arbitration agreement valid?
"2. If the purported November 26, 2003, arbitration agreement is valid, can Aurora, a non-signatory, enforce it?
"3. If the purported November 26, 2003, arbitration agreement is valid and Aurora can enforce it, does it apply retroactively to November 7, 2003?"
As to the first issue, the circuit court examined the testimony in the record from Ramsey and Harrison. The circuit court concluded that "Ramsey has presented substantial evidence that her signature on the November 26, 2003, arbitration agreement was procured by fraud in factum." The circuit court also noted, however, that deposition testimony from Ramsey, in which she stated that she did not know whether the signature on the November 26, 2003, arbitration agreement was her signature,
"when considered in conjunction with Harrison's [deposition testimony,] ... prevents the Court from granting [Ramsey's motion for a partial summary judgment]. As such, the Court finds there are disputed issues of material fact concerning (1) whether Ramsey validly assented to the arbitration agreement, and (2) whether her signature on the arbitration agreement (if valid) was procured by fraud in the factum."
The circuit court elected not to confine its order to its conclusion that "a jury must decide if the arbitration agreement is valid." Instead, the circuit court explained:
*844 "[I]n the event a jury might find the arbitration agreement is valid, in the interest of judicial economy and expeditiously moving this lawsuit along, the Court chooses to go ahead and address the contingent issues of non-signatory enforceability and retroactive enforcement." (Emphasis added.)
As to the second issue, the circuit court concluded that Aurora, as a nonsignatory, could enforce the arbitration agreement. The circuit court reasoned that the language in the arbitration agreement was "broad enough to encompass Ramsey's claims against Aurora." Specifically, the circuit court noted that the arbitration agreement stated that it applied to " 'any... dispute[ ] ... arising out of ... health care provided by the Facility to the Resident.' ... Although this underlying arbitration agreement does reference the signing parties, it does not limit applicability to disputes arising between them alone."
As to the third issue, the circuit court concluded that the arbitration agreement was effective only as of November 26, 2003, and that it was not retroactive to Pettway's original admission to the nursing home on November 7, 2003. The circuit court acknowledged that the language of the arbitration agreement was very broad, but it reasoned that "the circumstances surrounding the execution of the agreement" suggest that the parties did not intend for the November 26, 2003, arbitration agreement to apply retroactively to November 7, 2003. Specifically, the circuit court cited the undisputed evidence that Ramsey had declined to sign an arbitration agreement when she signed other admission papers on November 7, 2003. Thus, the circuit court concluded that the "Motion to Compel Arbitration is due to be DENIED, in part, as to any of Ramsey's claims arising prior to November 26, 2003."
In sum, the circuit court stated that the "Motion to Compel Arbitration, and Ramsey's Motion for Summary Judgment, are each due to be DENIED." Somewhat confusingly, however, the order followed the foregoing statement with a "Rulings" section, which stated, in part:
"Therefore, it is ORDERED, ADJUDGED, and DECREED:
"1. Defendant[s'] Motion to Compel Arbitration is HELD;
"2. Plaintiff Sharon Ramsey's Motion for Partial Summary Judgment ... is HELD ...."
(Capitalization in original.)
On April 25, 2017, the defendants appealed the circuit court's March 15, 2017, order. On May 9, 2017, Ramsey filed a cross-appeal from the same order.
On December 1, 2017, this Court's clerk's office issued a "show-cause order" to the defendants in which it noted the apparent contradiction between the circuit court's statements that the motion to compel arbitration had been "denied" and its statement that a ruling on the motion was "held." The show-cause order sought an explanation as to why the defendants' appeal of the March 15, 2017, order "should not be dismissed as taken from a nonappealable order."
Also on December 1, 2017, this Court's clerk's office issued a "remand order" to the circuit court regarding Ramsey's cross-appeal of the March 15, 2017, order denying her motion for a partial summary judgment. The remand order noted that it appeared that all claims in the case had not been adjudicated; thus, the order requested that the circuit court determine whether to:
"(1) make the interlocutory order of March 15, 2017, addressing Sharon Ramsey's motion for partial summary judgment a final judgment pursuant to *845 the provisions of Rule 54(b), Ala. R. Civ. P.;
"(2) adjudicate all remaining pending claims thus rendering a final judgment; or,
"(3) take no action, in which event this appeal will be dismissed as from a non-final judgment."
On December 13, 2017, the circuit court entered a "Revised and Amended Order on Pending Motions" in response to the show-cause order and the remand order. In its December 13, 2017, order, the circuit court deleted the statement in its "Rulings" section of the March 15, 2017, order that the defendants' motion to compel arbitration was "held." Instead, the order stated that the motion was "denied." It further added the following paragraph:
"Pursuant to Ala. R. Civ. Pro. 54(b), it is hereby ORDERED and DIRECTED this Court expressly DETERMINES that there is no just reason for delay and hereby DIRECTS the entry of a final judgment as to the denial of [the defendants'] Renewed Motion to Compel Arbitration."
(Capitalization in original.) Additionally, the circuit court deleted the statement in its "Rulings" section of the March 15, 2017, order that Ramsey's motion for a partial summary judgment was "held." Instead, the order stated that that motion was "denied." It further added the following paragraph:
"Pursuant to Ala. R. Civ. Pro. 54(b), it is hereby ORDERED and DIRECTED this Court expressly DETERMINES that there is no just reason for delay and hereby DIRECTS the entry of a final judgment as to the denial of Sharon Ramsey's Motion for Partial Summary Judgment."
(Capitalization in original.)
After the circuit court issued its amended order, the case was returned to this Court.
II. Analysis
A. The Defendants' Appeal -- Case No. 1160659
The defendants challenge the circuit court's conclusion that the arbitration agreement is not retroactive to November 7, 2003, and therefore that it does not require arbitration of claims for injuries asserted by Ramsey on behalf of Pettway's estate that occurred between November 7 and November 26, 2003, and that, Ramsey alleges, resulted in Pettway's death. The defendants argue that the circuit court erred by examining the circumstances surrounding the execution of the arbitration agreement to divine the intent of the parties rather than relying solely upon the plain and unambiguous language of the arbitration agreement. They further contend that the language of the arbitration agreement clearly evinces an intent to include all claims for injuries purposefully arising from Pettway's care at the nursing home and that led to her death, not just injuries Pettway allegedly sustained beginning on November 26, 2003.
Before we examine the defendants' contention, we note that the defendants do not challenge the circuit court's determination that there is an issue of fact regarding the validity of the arbitration agreement dated November 26, 2003, and that, therefore, the issue whether Ramsey signed that arbitration agreement or whether her signature was procured by fraud must be decided by a jury.[2] The failure to appeal as to *846 that issue raises a significant problem for the viability of this appeal.
This Court has repeatedly observed that
" '[a] motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. Id."[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question." Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n.1 (Ala. 1995) (opinion on application for rehearing).' "
Elizabeth Homes, L.L.C. v. Gantt, 882 So.2d 313, 315 (Ala. 2003) (quoting Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000) (emphasis added) ). " 'If the party opposing arbitration presents sufficient evidence to create a fact question as to the existence of a valid arbitration agreement, then the issue must be resolved by the trial court or by a jury, if one is requested.' " SSC Selma Operating Co. v. Gordon, 56 So.3d 598, 603 (Ala. 2010) (quoting Ex parte Caver, 742 So.2d 168, 172 n.4 (Ala. 1999) (emphasis added) ).
A basic point from the foregoing authorities is that a valid arbitration agreement is a prerequisite to compelling arbitration of a dispute. In this case, the circuit court has determined that an issue of fact exists regarding the validity of the November 26, 2003, arbitration agreement and that that issue is to be submitted to a jury. The defendants have not challenged that determination; instead, they seek review of the circuit court's determination regarding the scope of the arbitration agreement. But the circuit court's determination that the arbitration agreement is not retroactive to November 7, 2003, necessarily assumes the validity of the arbitration agreement. Indeed, the circuit court in its March 15, 2017, order stated that "retroactive enforcement" was a "contingent issue," i.e., an issue that would become relevant "in the event a jury might find the arbitration agreement is valid." If the jury concludes that the arbitration agreement is not valid, however, the retroactive-enforcement issue becomes moot.
We addressed a similar situation in Conseco Finance Corp. of Alabama v. Slay, 839 So.2d 617 (Ala. 2002). In that case, Conseco Finance Corp. (" Conseco") filed an action against Nora Slay
"alleging that it had entered into a contract with Slay for the purchase of a mobile home; that, pursuant to that contract, it had retained a purchase-money security interest in the home; and that under the terms of the contract it was entitled to the recovery of the collateral (i.e., the mobile home) and a money judgment for the outstanding indebtedness on the home. Conseco amended its complaint on October 23, 2000. Slay answered Conseco's amended complaint on November 20, 2000, and asserted a counterclaim alleging that the signature on *847 the contract purporting to be hers was a forgery."
839 So.2d at 617-18.
Conseco then filed a motion to compel arbitration of Slay's counterclaim pursuant to an arbitration provision contained in the mobile-home contract. At a hearing on that motion, following arguments from the parties, the trial court stated:
" 'At this time I am going to state that Nora Slay's allegation that her purported signature on these documents is, in fact, a forgery, ... is going to be sufficient to prohibit the matter from proceeding to arbitration, and that she would have the right to a jury trial in this matter.'
"The case action summary sheet has a notation for the same day which states, 'Motion to Compel Arbitration DENIED.' Thereafter, Conseco filed a motion to alter, amend, or vacate the order denying its motion to compel arbitration, arguing, in part, that the trial court's order denying arbitration should be amended
" 'to clarify that arbitration is not being denied at this stage of the proceeding but, rather, that the issue of the validity of Slay's signature on the arbitration agreement should be determined by trial by jury and thus the validity of the arbitration agreement will be determined by jury trial.' "
839 So.2d at 618. The trial court denied Conseco's motion.
On appeal, Conseco "concede[d] that the trial court properly held that the question whether the signature on the contract purporting to be Slay's was forged was a question for a jury." Id. However, Conseco argued that the trial court's ruling could be misconstrued as denying arbitration entirely, and it asked this Court to direct the trial court to clarify its ruling "to assure Conseco that its motion to compel arbitration was 'conditionally' denied pending a resolution by a jury of the validity of the contract containing the arbitration provision." Id.
The Court refused to provide Conseco the relief it requested, explaining:
"Unfortunately for Conseco, it has, at this point in the proceedings, requested relief for a harm it has not yet suffered. Rather, Conseco claims that, assuming the jury finds the contract valid, the trial court's ruling and order could be read one way (i.e., as an absolute denial of arbitration), and that, if it is so read, Conseco would be legally harmed. Such speculative possibilities do not provide us with a 'live controversy.' 'Matters that may or may not occur in the future do not present an existing controversy ....' Baldwin County v. Palmtree Penthouses, Ltd., 831 So.2d 603, 605 (Ala. 2002). The trial court has not construed its own ruling and order in the way Conseco fears it can be construed; neither has the trial court had the opportunity to apply such a construction because there is no indication that a jury has decided the forgery issue. Should the trial court construe its ruling permitting a trial by a jury 'in this matter' to embrace all issues and not merely the authenticity of the signature on the arbitration agreement, Conseco may then appeal on the issue it has argued before this Court.
"We conclude, therefore, that the issue raised by Conseco is not ripe for adjudication. Although neither party questioned the ripeness of this matter, we must dismiss this appeal ex mero motu because we lack jurisdiction to hear it. See Baldwin County, 831 So.2d at 605 n.4 (this Court has a duty to notice a lack of subject-matter jurisdiction);
*848 Boone v. Director of Dep't of Public Safety, 337 So.2d 6, 8 (Ala. Civ. App. 1976) ('The dismissal of an action ex mero motu when it shows upon its face that the court is without jurisdiction is always proper.')."
Id. at 618-19 (first and last emphasis added). Cf. SSC Selma Operating Co., LLC v. Gordon, 112 So.3d 36, 41 (Ala. 2012) (holding that "[t]he trial court properly denied the Warren Manor defendants' motion to compel arbitration of Gordon's claims against them because the trial court has yet to conduct a trial to resolve the issue identified by this Court in Gordon I-- whether a valid arbitration agreement exists between Gordon and SSC. Only if that issue is answered in the affirmative may the Warren Manor defendants properly move to compel arbitration. If that trial results in a judgment holding that there is no valid arbitration agreement, then the Warren Manor defendants may file a timely appeal challenging the trial court's ruling excluding any evidence they wished to submit at trial.").
Like the defendants in Conseco, the defendants here seek relief from a harm they have not yet suffered because there has been no definitive determination that the arbitration agreement is valid and therefore enforceable. The circuit court's finding that the arbitration agreement is not retroactive to November 7, 2003, only becomes relevant to the defendants if the jury determines that the arbitration agreement is valid and enforceable. In other words, the defendants' appeal is clearly premature.
"Matters that may or may not occur in the future are not matters in controversy.... Furthermore, because the facts necessary to create an actual controversy have not materialized, ... [the appellant] is essentially asking this Court to render an advisory opinion.... See also Smith v. Alabama Dry Dock & Shipbuilding Co., 293 Ala. 644, 651, 309 So.2d 424, 429 (1975) ('It has long been the law of this State that courts will not decide moot, abstract or hypothetical questions or render purely advisory opinions.')."[3]
Case v. Alabama State Bar, 939 So.2d 881, 884 (Ala. 2006). See also Baldwin Cty. v. Palmtree Penthouses, Ltd., 831 So.2d 603, 605 (Ala. 2002) ("Matters that may or may not occur in the future do not present an existing controversy ....").
Based on the foregoing, the defendants' appeal is due to be dismissed.
B. Ramsey's Cross-Appeal -- Case No. 1160726
In her cross-appeal, Ramsey seeks to challenge the circuit court's determination that she was not entitled to a summary judgment on the issue of the validity of the arbitration agreement. Specifically, she argues that the evidence in the record unequivocally demonstrates that Ramsey's signature on the arbitration agreement -- even if it was authentic -- was procured by fraud. This is so, Ramsey says, because she submitted clear affidavit and deposition testimony detailing how Harrison presented the admission documents to her on November 26, 2003; in contrast, Harrison testified in her deposition that she could not specifically recall her interaction with Ramsey on November 26, 2003, and, instead, she described her "common practice" of reviewing admission documents with customers. Additionally, Ramsey seeks to challenge the circuit court's determination that Aurora could enforce the arbitration agreement even though it was not a signatory to the agreement.
*849 As with Conseco's appeal, Ramsey's cross-appeal raises immediate jurisdictional problems. To begin with, Ramsey purports to appeal from the denial of a motion for a partial summary judgment. Therefore, by its nature, the ruling from which Ramsey has appealed is a nonfinal judgment. The fact that the circuit court subsequently purported to make its ruling final through Rule 54(b), Ala. R. Civ. P., is of no moment. An order denying a motion for a summary judgment " ' "is inherently non-final and cannot be made final by a Rule 54(b) certification.... An order denying summary judgment is interlocutory and nonappealable." ' " Continental Cas. Co. v. SouthTrust Bank, N.A., 933 So.2d 337, 340 (Ala. 2006) (quoting Fahey v. C.A.T.V. Subscriber Servs., Inc., 568 So.2d 1219, 1222 (Ala. 1990), quoting in turn Parsons Steel, Inc. v. Beasley, 522 So.2d 253, 257-58 (Ala. 1988) ). In particular in this instance, the circuit court did not adjudicate any "claim" of Ramsey's in its March 15, 2017, order. It simply purported to rule on issues related to whether Ramsey's claims against the defendants must be arbitrated pursuant to the November 26, 2003, arbitration agreement.
Ramsey contends that she has a right to appeal the circuit court's order under Rule 4(d), Ala. R. App. P., which provides in part that "[a]n order granting or denying a motion to compel arbitration is appealable as a matter of right." Ramsey insists that she "was aggrieved by the trial court's ruling below. The trial court denied her arbitration-related motion and ordered a trial, even after it found that there was no dispute of fact concerning whether the November 26, 2003, document was legitimate and binding."
The problem with this argument is that Ramsey is intermingling the motions of the parties below in a futile effort to find authority for being able to file an immediate appeal. Specifically, it was the defendants that filed a motion to compel arbitration. If the circuit court had, in fact, granted that motion to compel arbitration, unquestionably Ramsey could have appealed such a decision under Rule 4(d), Ala. R. App. P., as an aggrieved party. See, e.g., Bowater Inc. v. Zager, 901 So.2d 658, 664 (Ala. 2004) (explaining that "subsection (d) [of Rule 4, Ala. R. App. P.,] now evenhandedly states that both an order granting and an order denying a motion to compel arbitration are 'appealable as a matter of right' within 42 days from date of the entry of the order"). However, to the extent that any definitive ruling was entered by the circuit court with regard to the defendants' motion to compel arbitration, the motion was denied because the circuit court concluded that an issue of fact existed as to the validity of the arbitration agreement. That issue has to be settled by a jury before any possible further disposition on the motion to compel arbitration is made. As we noted in Part A of this analysis, the defendants could have appealed the portion of the circuit court's order finding an issue of fact as to the validity of the arbitration agreement, but they did not do so. Ramsey cannot appeal the denial of the motion to compel arbitration because she is not aggrieved by that decision. See, e.g., Alcazar Shrine Temple v. Montgomery Cty. Sheriff's Dep't, 868 So.2d 1093, 1094 (Ala. 2003) (noting that "[o]nly a party prejudiced or aggrieved by a judgment can appeal"); Sho-Me Motor Lodges, Inc. v. Jehle-Slauson Constr. Co., 466 So.2d 83, 88 (Ala. 1985) (observing that "when an error applies only to a party who does not appeal therefrom, another party cannot make any such error an issue on appeal").
Assuming, for the sake of argument, that Ramsey can file a motion for a partial summary judgment regarding the validity of the arbitration agreement, *850 Rule 4(d), Ala. R. App. P., does not provide authorization for Ramsey to appeal the circuit court's denial of that motion because of the simple fact that Ramsey's motion is not a "a motion to compel arbitration." Ramsey cites no authority other than Rule 4(d), Ala. R. App. P., that would allow her to immediately appeal the circuit court's ruling on her motion, and we have not been able to find any caselaw suggesting as much. Thus, even if the circuit court erred in denying Ramsey's motion for a partial summary judgment, the order is not immediately appealable under the Alabama Rules of Appellate Procedure because the order is not a final judgment and cannot be made final pursuant to Rule 54(b).
Based on the foregoing, Ramsey's cross-appeal is due to be dismissed.
IV. Conclusion
Because it is premature, the defendants' appeal is due to be dismissed. Ramsey's cross-appeal is likewise due to be dismissed because it seeks review of a nonfinal judgment.
1160659-APPEAL DISMISSED.
1160726-APPEAL DISMISSED.
Stuart, C.J., and Parker, Main, and Bryan, JJ., concur.

The record indicates that Pettway suffered from dementia and that Ramsey had been appointed Pettway's attorney-in-fact.

We note that the defendants have not contended either in the circuit court or before this Court that the arbitration agreement contains an arbitrability clause that would require the submission to the arbitrator of issues of the validity and scope of the arbitration agreement. See, e.g., Regions Bank v. Rice, 209 So.3d 1108, 1110 (Ala. 2016) (observing that "disputes regarding the validity and scope of an arbitration provision ... are issues of substantive arbitrability, and generally such issues are decided by a court. However, there is an important exception to that general rule. Gateway questions of substantive arbitrability may be delegated to the arbitrator if the delegation is clear and unmistakable.").

Section 12-2-10, Ala. Code 1975, which allows the Governor or either house of the Alabama Legislature to request advisory opinions "on important constitutional matters," constitutes the sole exception to this rule.