The plaintiff in a declaratory action, Capital Alliance Insurance Company, appeals from a summary judgment entered for Thorough-Clean, Inc., and S.H. and her husband R.H. We affirm.
A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala.R.Civ.P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present "substantial evidence" creating a genuine issue of material fact — "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Ala. Code 1975, § 12-21-12; West v. Founders LifeAssurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
Viewing the facts in the light most favorable to Capital Alliance, as required under the applicable standard of review, we must assume that the following occurred:
Thorough-Clean, Inc., is a business that provides janitorial services. It was insured under a Capital Alliance Insurance Company "Commercial General Liability Coverage" insurance policy from June 30, 1991, to June 30, 1992. This policy provided certain property and liability coverages to Thorough-Clean, subject to the terms, conditions, and exclusions in the policy.
In April 1991, Thorough-Clean had entered into a two-year contract with Alabama Power Company to provide "all labor, material, equipment and supervision to perform janitorial cleaning services" for Alabama Power Company locations throughout Alabama.
Thorough-Clean had a policy not to hire or recommend applicants with a history of incarceration. Mary Roberts was the office manager for Thorough-Clean; her job included, among other things, receiving and processing employment applications, interviewing job applicants, and checking all references. In May 1991, Mary Roberts's son, Michael Cortez Roberts, applied for employment with Thorough-Clean, indicating on his application that he had not been convicted of a felony within the last seven years, although in fact during that time he had been convicted of a crime of violence and had been sentenced to prison. Mary Roberts had personal knowledge that Michael had been in prison for a crime of violence and had heard that Michael had had "trouble with the law with drugs," but she did not tell anyone at Thorough-Clean about Michael's conviction, nor did she review Michael's application to see if it was accurate before she filed it for final approval, and she did not check the references Michael had listed on the application. According to Mary Roberts, she did not review Michael's application because "that was my son" and because she knew that she was not going to be the one to make a final decision on Michael's being hired. Michael was hired as a janitor for Thorough-Clean, without any Thorough-Clean employee's having reviewed his employment application.
In mid-July 1991, while assigned to perform janitorial services at Alabama Power Company's office in Gadsden, Alabama, Michael allegedly raped and robbed S.H., an employee of Alabama Power Company in Gadsden. Michael was not being supervised by Thorough-Clean at the time the alleged incident occurred. S.H. and her husband R.H. sued Thorough-Clean, alleging that S.H. had been proximately injured by what they called Thorough-Clean's "negligent and wanton practices in the hiring, managing and *Page 1351 
supervising of its employee, [Michael] Roberts."[1] Capital Alliance assumed the defense of Thorough-Clean under a reservation of rights and filed this declaratory judgment action, "seeking a judicial determination of the rights, obligations, and responsibilities of [Capital Alliance] and of [Thorough-Clean] arising out of a written policy of insurance." S.H. and R.H. were allowed to intervene in the declaratory judgment action. S.H., R.H., and Thorough-Clean moved for a summary judgment holding that they were entitled to coverage, and the trial court granted their motion. Capital Alliance appeals.
The relevant provisions of the policy at issue are as follows:
 "COMMERCIAL GENERAL LIABILITY COVERAGE
". . . .
 "The word 'insured' means any person or organization qualifying as such under SECTION II — WHO IS AN INSURED.
"SECTION I — COVERAGES
 "COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
". . . .
"2. Exclusions.
"This insurance does not apply to:
 "a. 'Bodily injury' . . . expected or intended from the standpoint of the insured."
". . . .
"SECTION II — WHO IS AN INSURED
"1. If you are designated in the Declarations as:
". . . .
 "c. An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. . . .
"2. Each of the following is also an insured:
 "a. Your employees, other than your executive officers, but only for acts within the line and scope of their employment by you."
Michael does not qualify for coverage under the terms of the policy, because he would have been acting outside the line and scope of his employment in raping S.H. See, Doe v. Swift,570 So.2d 1209 (Ala. 1990), and the cases cited therein for an in-depth discussion of cases holding that sexual misconduct by an employee is purely personal and therefore outside the line and scope of employment.
Under the facts of this case, however, Thorough-Clean qualifies for coverage under the policy, and the trial court's judgment is due to be affirmed unless exclusion a. quoted above applies — that is, unless there is evidence that Thorough-Clean "expected or intended" the bodily injury to S.H.
A purely subjective standard governs the determination of whether an insured either "expected or intended" to inflict bodily injury upon another:
 "[T]he question of whether an injury which the insured inflicts upon another person is 'expected or intended from the standpoint of the insured' is a question of fact for the jury or judge.
". . . .
 "Because the presumption in tort and criminal law that a person intends the natural and probable consequences of his or her intentional acts has no application to the interpretation of the terms used in the 'expected or intended from the standpoint of the insured' policy exclusion, the policy term, 'expected or intended injury,' cannot be equated with 'foreseeable injury.' . . .
 ". . . [A] purely subjective standard governs the determination of whether the insured . . . either expected or intended to inflict bodily injury upon [another]. Under this subjective test, an injury is 'intended from the standpoint of the insured' if the insured possessed the specific intent to cause bodily injury to another, whereas an injury is 'expected from the standpoint of the insured' if the insured subjectively possessed a high degree of certainty that bodily *Page 1352 
injury to another would result from his or her act."
Alabama Farm Bureau Mut. Cas. Ins. Co. v. Dyer, 454 So.2d 921,924-25 (Ala. 1984). See White v. Maryland Cas. Co.,589 So.2d 1294 (Ala. 1991); Boyd v. Great Central Ins. Co., 401 So.2d 19
(Ala. 1981).
There is no evidence in the record that Thorough-Clean either "expected or intended" the bodily injury of S.H.
Furthermore, although the evidence establishes that Mary Roberts (Michael's mother and Thorough-Clean's office manager, who was in charge of interviewing job applicants, reviewing their applications, and checking their references) knew Michael had been convicted of and sentenced for an act of violence and established that she had heard that he had been involved with drugs, that evidence is insufficient to support a finding that Mary Roberts "possessed a high degree of certainty" that Michael would cause bodily injury to S.H.
Based on the foregoing discussion, we hold that the exclusion provision in the policy does not exclude coverage. As the trial court held: "Capital Alliance is obligated to defend and to provide coverage benefits to its insured, Thorough-Clean, as a result of the [claim of negligent hiring and supervision] asserted against it."
We note that State Farm Fire Cas. Co. v. Davis,612 So.2d 458 (Ala. 1993) (involving allegations of sexual abuse and molestation of children), in which the inferred intent standard governed the determination of whether an insured "intended or expected" to inflict bodily injury upon another, is distinguishable from this case on its facts and on the specific wording of the exclusion provision in the policy.
AFFIRMED.
HORNSBY, C.J., and ALMON, KENNEDY and COOK, JJ., concur.
[1] R.H.'s claim against Thorough-Clean sought damages for loss of consortium.