745 So.2d 264 (1998)
NATIONWIDE INSURANCE COMPANY
v.
David B. NILSEN.
David B. Nilsen
v.
Nationwide Insurance Company.
1961955 and 1962035.
Supreme Court of Alabama.
June 19, 1998.
Rehearing overruled June 11, 1999.
*265 Lynn Etheridge Hare and Celeste Patton Armstrong of Hare, Hair & White, P.C., Birmingham, for appellant/cross appellee Nationwide Insurance Company.
Donald R. Rhea of Rhea, Boyd & Rhea, Gadsden; and Thomas E. Davis, Gadsden, for appellee/cross appellant David B. Nilsen.
MADDOX, Justice.
These appeals involve breach of contract and bad faith claims brought against Nationwide Insurance Company ("Nationwide") by one of its policyholders, David B. Nilsen. Nationwide appeals a summary judgment for Nilsen on his breach of contract claim, and Nilsen appeals a summary judgment entered for Nationwide on his bad faith claim. For the reasons discussed below, we affirm the summary judgment for Nationwide on the bad faith claim and we reverse the summary judgment on the contract claim and render a judgment for Nationwide on that claim.
In April 1993, Nationwide, through its agent Randy Lankford, sold Nilsen a "Golden Blanket" homeowner's policy; that policy was automatically renewed in April 1994. On July 4, 1994, the insured premises were destroyed by fire. Nilsen claimed he was out of town on the day of the fire. On July 5, 1994, Nilsen contacted Nationwide about the fire, and on July 6, 1994, he met with Barbara Barclay, a Nationwide adjuster. At that meeting, in response to Barclay's questions, Nilsen indicated that before purchasing the insurance policy involved in this case he had not suffered any losses and had not had a prior policy canceled or nonrenewed. Nilsen had also indicated on his insurance application that he had not suffered any previous losses. However, on July 29, 1994, Nilsen mentioned to Barclay, in contrast to his earlier statements, that he had suffered a prior fire loss. In a later interview, Nilsen also informed a Nationwide investigator that the prior loss he had disclosed to Barclay on July 29 had been a total loss. The record indicates that Nilsen explained the discrepancy in his statements by saying that he had mistakenly believed that the questions regarding prior losses were directed solely towards losses at his current residence.
As part of its investigation of Nilsen's claim, Nationwide retained a fire expert to perform a cause-and-origin investigation of the fire. The investigator could not determine the nature of the fire. However, the investigator said the fire had burned extremely hot, and he reported that at least one sample of the fire debris had tested positive for a flammable substance commonly found in pesticides.
After Barclay's initial interview with Nilsen on July 6, 1994, Nationwide provided Nilsen $2,000 as an advance of "additional living expense" money that was provided for in the policy. At some point, Nationwide advanced Nilsen another $3,000 for additional living expenses, which he intended to use for a deposit on a house he planned to rent. However, on approximately July 29, 1994, Barclay informed Nilsen in a letter that his claim was still under investigation and that she would make no further advances for additional living expenses until the investigation was completed.
Nationwide continued its investigation into Nilsen's claim, and in the fall of 1994 it requested that Nilsen appear for an examination under oath, as permitted under the insurance contract. At that point, Nilsen employed an attorney, who requested that the date of the examination under oath be changed because of the attorney's prior commitments. Nationwide, at the request of Nilsen or his attorneys, agreed four or five times to reschedule the examination. Before an examination under oath was conducted, however, Nilsen retained a different attorney and, on March 10, 1995, filed this action against Nationwide, Lankford, and Barclay. At that point, Nationwide was continuing its investigation into Nilsen's claim and had not rendered a decision on that claim.
*266 In his complaint, Nilsen alleged breach of contract, fraud, suppression, and bad faith failure to pay an insurance claim. The trial court granted Barclay's motion to dismiss, and Nilsen later dismissed Lankford and also dismissed his fraud and suppression claims. Nationwide answered, stating that Nilsen's claim had not been denied, that Nilsen had failed and refused to provide information necessary to the investigation of his claim, that Nilsen had failed to comply with the conditions precedent in the insurance policy, and that Nationwide had a legitimate or arguable reason for its continued investigation of Nilsen's claim. The case went through a lengthy litigation process, including a mistrial caused by a deadlocked jury. Both Nilsen and Nationwide moved for a summary judgment on the contract claim and on the bad faith claim. The trial court ultimately entered a summary judgment for Nationwide on Nilsen's claim alleging bad faith and entered a summary judgment for Nilsen on the breach of contract claim. The court subsequently awarded Nilsen compensatory damages of $574,174.17.
Both Nilsen and Nationwide appeal. Nationwide argues that the trial court erred in entering the summary judgment for Nilsen on the breach of contract claim because, it argues, Nilsen failed to comply with conditions precedent to coverage. Nationwide also contends that the trial court abused its discretion in not allowing Nationwide to amend its answer to add the defenses of arson and misrepresentation on the application for insurance. Finally, Nationwide argues that the trial court erred in awarding interest on the judgment for the period before the date of the judgment.
Nilsen argues that the trial court erred in entering the summary judgment for Nationwide on the bad faith claim, because, he says, the evidence presented a question of fact as to whether Nationwide had either intentionally or recklessly failed to properly investigate the claim or to subject the claim to a cognitive evaluation and review.
We agree with Nationwide that Nilsen failed to comply with a condition precedentthat he submit to an examination under oath. Only after complying with that condition could he recover under the insurance contract. Therefore, we conclude that Nationwide was entitled to a judgment as a matter of law on Nilsen's breach of contract claim.
Nilsen's homeowner's policy contained the following provisions relating to Nilsen's obligations under the policy in the event of a loss:
"2. Your duties after Loss. In case of a loss, you must:

". . . .
"c. prepare a list of damaged personal property showing in detail the quantity, description, actual cash value, and amount of loss. Attach all bills and receipts that support the figures.
"d. as often as we reasonably require:
"(1) exhibit the damaged property;
"(2) submit to an examination under oath;

"(3) provide records and documents we request and permit us to make copies.
"e. submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
"(1) the time and cause of loss.
"(2) interest of the insured and all others in the property involved and all liens on the property.
"(3) other insurance that may cover the loss.
"(4) changes in title or occupancy of the property during the term of the policy.
"(5) detailed estimates for repair of damage.

*267 "(6) a list of damaged personal property described in 2c.
"(7) receipts for additional living expenses and records supporting the fair rental value loss.
"(8) evidence or affidavit supporting a claim under the Credit Card, Electronic Fund Transfer Card and Forgery Coverage. It should state the amount and cause of loss."
(Emphasis added.)
Nationwide argues that these provisions establish conditions precedent to coverage under the contract and that Nilsen failed to comply with these conditions by failing to appear for an examination under oath and failing to respond to requests for various documents and records relevant to his financial status.
We agree with Nationwide that Nilsen's insurance policy established, as a strict condition precedent to Nationwide's liability under the contract, that Nilsen submit to an examination under oath. An insurance company is entitled to require an insured to submit to an examination under oath as part of its claims investigation process. See Payne v. Nationwide Mut. Ins. Co., 456 So.2d 34, 37 (Ala.1984). Moreover, an insurer's obligation to pay or to evaluate the validity of an insured's claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims. See United Ins. Co. of America v. Cope, 630 So.2d 407, 411 (Ala.1993).
Nilsen's policy required him to submit to an examination under oath in order to recover under the contract. Therefore, in order to recover on his claim alleging breach of contract, Nilsen was required to first comply with the condition precedent that he submit to an examination under oath as reasonably required by Nationwide. Id.; see also, Pervis v. State Farm Fire & Cas. Co., 901 F.2d 944 (11th Cir. 1990), cert. denied, 498 U.S. 899, 111 S.Ct. 255, 112 L.Ed.2d 213 (1990); 13A G. Couch, Insurance § 49A:361 (2d ed. 1982 & Supp.1994) (explaining that it is the law in most jurisdictions that the requirement of submitting to an examination, if the request for the examination is reasonable, is strictly construed as a condition precedent to the insurer's liability); Watson v. National Surety Corp., 468 N.W.2d 448, 450 (Iowa 1991); but cf. Puckett v. State Farm General Ins. Co., 314 S.C. 371, 444 S.E.2d 523 (1994) (holding that provisions of an insurance policy requiring the insured to submit to examinations under oath were not strict conditions precedent and that it was a question for a jury as to whether the insurer was prejudiced by the insured's alleged failure to submit to examination under oath, where the insured did submit to a deposition after commencing litigation).
Nilsen presents primarily two arguments in response to Nationwide's allegation that he failed to submit to an examination under oath as required by the contract. First, Nilsen contends that he was not required to comply with this condition precedent because, he argues, Nationwide either breached its obligations under the contract, by not providing any additional living expenses after July 29, 1994, or repudiated the contract when it notified him on July 29, 1994, that it would provide no further additional monetary advances and that payment for any additional expenses would be considered after the investigation was completed. Accordingly, Nilsen contends, he was excused from further compliance with the terms of the contract. See Shirley v. Lin, 548 So.2d 1329, 1334 (Ala.1989) ("Once a party to a contract repudiates the agreement, the other party is excused from future performance." (citations omitted)).
Nilsen's argument that Nationwide breached its contract by failing to pay additional living expenses after July 29, 1994, is without merit. The insurance contract provided:
"1. Additional Living Expense. If a covered loss requires you to leave the *268 residence premises, we cover the required increase in living expenses you incur to maintain your normal standard of living. Payment will be for the shortest time required to repair or replace the premises; or, if you permanently relocate, for the shortest time required for your household to settle elsewhere. This period of time is not limited by the end of this policy term...."
However, this obligation must be read in conjunction with those provisions establishing the insured's obligations in the event of a loss. As described above, the insurance contract provided that in the event of a loss, Nilsen was required to submit, within 60 days after being requested, a signed, sworn proof of loss that set forth, among other things, receipts for additional living expenses and records supporting the calculation of fair-rental-value loss. It is undisputed that Nationwide requested that Nilsen submit his sworn proof of loss and that, although Nilsen submitted a sworn proof of loss, he did not include any receipts for additional living expenses when he did so; indeed, Nilsen never supplied any receipts regarding his additional living expenses. Because the contract clearly required that the requested sworn proof of loss include such receipts and Nilsen failed to provide these receipts, Nationwide was not obligated to furnish additional living expenses. Cf. Hilley v. Allstate Ins. Co., 562 So.2d 184 (Ala.1990) (upholding a summary judgment in favor of the insurer when there was no evidence that the insured had satisfied the condition precedent of submitting receipts for additional living expenses).
We are also unpersuaded by Nilsen's argument that Nationwide repudiated its obligation to provide additional living expenses. To be found to have renounced a contract, a party must demonstrate an intention to refuse performance within the future time allowed by the contract. See Shirley, 548 So.2d at 1334. In other words, Nationwide's action must have amounted to an "unqualified refusal" or "declaration of inability" to perform the contract. Id.
The evidence in this case is insufficient to support a finding that Nationwide repudiated its obligation to pay additional living expenses. Nationwide merely informed Nilsen that it would no longer provide any monetary advances, i.e., payments, without first receiving expense receipts; that his claim was under investigation; and that his claims for additional living expenses would be considered after the investigation was completed. The contract provisions at issue specifically stated that Nationwide would provide additional living expenses if Nilsen suffered a covered loss and submitted receipts documenting those expenses. We conclude that Nationwide did not repudiate these provisions by, in effect, informing Nilsen that it was unclear whether his loss was covered. Nationwide did not state that it would not pay additional living expenses, and, therefore, did not provide an "unqualified refusal" to perform its obligations under the contract.
Nilsen next argues that, even if Nationwide did not repudiate the contract, he adequately performed his obligation to submit to an examination under oath, by submitting to a deposition pursuant to Rule 30, Ala. R. Civ. P., after he filed this action. Nilsen contends that a deposition is an "examination under oath" and that Nationwide could have obtained during the deposition any information that it could have obtained through the examination under oath it had requested. He also notes that the contract does not specifically state that the examination under oath must occur before an action is filed.
Nationwide contends that providing a deposition after the insured has sued the insurer does not excuse the insured's failure to submit to an examination under oath before suing. We agree. Depositions and examinations under oath serve different purposes. As explained above, a provision requiring an insured to submit to an examination under oath is a condition precedent to recovery, because an insurer *269 has the right to seek all information regarding the insured's claim so that the insurer can adequately decide upon its obligations to the insured. Accordingly, an examination under oath is a part of the claims investigation process. In contrast, a deposition is not part of the claims investigation process; it is designed to facilitate the gathering of information once an insurer has denied the insured's claim. Because of the inherent differences between an examination under oath called for in an insurance contract and a deposition under the Alabama Rules of Civil Procedure, we conclude that an insured does not comply with a contractual provision requiring him to submit to an examination under oath, by submitting to a deposition after filing a lawsuit against the insurer. See, e.g., United States Fidelity & Guaranty Co. v. Welch, 854 F.2d 459, 461 (11th Cir.1988) ("We agree with [the insurer] that its right to obtain sworn statements arises from the policy provisions and is contractual in nature, and is not to be confused with procedures authorized by statute for taking depositions."); Archie v. State Farm Fire & Casualty Co., 813 F.Supp. 1208 (S.D.Miss. 1992); Goldman v. State Farm Fire General Ins. Co., 660 So.2d 300 (Fla. 4 Dist.Ct. App.1995) (explaining the distinction between a post-suit deposition and an examination under oath provided for in an insurance contract).
Because it is undisputed that Nationwide requested that Nilsen submit to an examination under oath and that Nilsen failed to do so before filing this action, we must conclude that Nilsen failed to comply with a condition precedent to recovery under the contract.[1] Therefore, we reverse the summary judgment in favor of Nilsen on the breach of contract claim and render a judgment for Nationwide on that claim.
Because Nationwide was entitled to a judgment on Nilsen's breach of contract claim, we affirm the summary judgment in favor of Nationwide on Nilsen's bad faith claim. See Hilley, 562 So.2d at 190 ("In a normal case, such as this one, to prevail on a claim [alleging] bad faith refusal to pay, the plaintiff must be entitled to a directed verdict on the underlying contract claim.").
1961955REVERSED AND JUDGMENT RENDERED.
1962035AFFIRMED.
HOOPER, C.J., and HOUSTON, SEE, and LYONS, JJ., concur.
ALMON, SHORES, KENNEDY, and COOK, JJ., dissent.
COOK, Justice (dissenting).
I respectfully dissent. The majority reverses a summary judgment entered in favor of David Nilsen, whose home was destroyed by fire while it was insured by Nationwide Insurance Company ("Nationwide"), in Nilsen's action against Nationwide alleging breach of its contract to pay insurance proceeds. To resolve the issues presented, we must identify the first material breach in the contractual relationship between the parties. The majority, unfortunately, has misidentified that breach and has, therefore, reached the wrong result.
The majority concludes that Nilsen himself materially breached the contract on March 10, 1995, by commencing this action before he had submitted to an "examination under oath." In that connection, the Nationwide policy provided:
"2. Your duties after Loss. In case of a loss, you must:
". . . .
"c. prepare a list of damaged personal property showing in detail the quantity, description, actual cash value, and amount of loss. Attach *270 all bills and receipts that support the figures.
"d. as often as we reasonably require:
"(1) exhibit the damaged property;
"(2) submit to an examination under oath;
"(3) provide records and documents we request and permit us to make copies.
"e. submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
"(1) the time and cause of loss.
"(2) interest of the insured and all others in the property involved and all liens on the property.
"(3) other insurance that may cover the loss.
"(4) changes in title or occupancy of the property during the term of the policy.
"(5) detailed estimates for repair of damage.
"(6) a list of damaged personal property described in 2c.
"(7) receipts for additional living expenses and records supporting the fair rental value loss."
(Emphasis added.) The policy also provided:
"1. Additional Living Expense. If a covered loss requires you to leave the residence premises, we cover the required increase in living expenses you incur to maintain your normal standard of living. Payment will be for the shortest time required to repair or replace the premises; or, if you permanently relocate, for the shortest time required for your household to settle elsewhere. This period of time is not limited by the end of this policy term...."
(Emphasis added.)
The majority states: "It is undisputed that Nationwide requested that Nilsen submit his sworn proof of loss and that, although Nilsen submitted a sworn proof of loss, he did not include any receipts for additional living expenses when he did so; indeed, Nilsen never supplied any receipts regarding his additional living expenses." 745 So.2d at 268. What the majority overlooks in this regard, however, is that on July 29, 1994, only 25 days after the fire, Nilsen had received a letter from Nationwide stating that Nationwide would not make any payments for living expenses until it completed an "investigation" of the cause of the fire. This flat refusal was not, in any way, contingent on whether Nilsen provided receipts for the living expenses he was continually incurring as a result of being homeless. Thus, when the majority states that "Nationwide ... informed Nilsen [in the July 29, 1994, letter] that it would no longer provide any monetary advances, i.e., payments, without first receiving expense receipts," 745 So.2d at 268 (emphasis added), it mischaracterizes the facts.
This flat refusal was repugnant to the plain terms of the policy, because the policy required Nationwide to reimburse Nilsen for the cost of living expenses incurred during the "time required to repair or replace the premises," or during the time "required for [the] household to settle elsewhere." (Emphasis added.) Nothing in the policy authorized Nationwide to abate or deny such payments for so long a time as it chose while it questioned the cause of the fire. The majority's assertion that Nationwide was authorized to deny payments for as long as it might deem necessary to determine "whether his loss was covered," 745 So.2d at 268, merely parrots a disingenuous, ad hoc argument advanced by Nationwide.
A contract "is unambiguous if only one reasonable meaning clearly emerges." Reeves Cedarhurst Dev. Corp. v. First Amfed Corp., 607 So.2d 184, 186 (Ala.1992) (quoting Vainrib v. Downey, 565 So.2d 647, 648 (Ala.Civ.App.1990)). A construction that would leave an insured homeless literally "out on the street"for *271 such an indefinite period of time as the insurer might entertain some doubts about the cause of the fire is patently unreasonable. Indeed, it is undisputed that investigation was still ongoing when the summary judgments were entered in this case. In short, the July 29, 1994, letter contained a clear, unambiguous statement of Nationwide's intent not to perform material provisions of the contract.
An "`unqualified refusal, or declaration of inability, substantially to perform according to the terms of [an] obligation,'" constitutes an anticipatory repudiation of the contract. Draughon's Business College v. Battles, 35 Ala.App. 587, 590, 50 So.2d 788, 790 (1951) (quoting Mobley v. New York Life Ins. Co., 295 U.S. 632, 55 S.Ct. 876, 79 L.Ed. 1621 (1935)). "Once a party to a contract repudiates the agreement, the other party is excused from further performance." Shirley v. Lin, 548 So.2d 1329, 1334 (Ala.1989). In the face of Nationwide's unqualified refusal on July 29, 1994, to pay Nilsen's living expenses, Nilsen was legally authorized, as of that date, to commence a breach-of-contract action against Nationwide.
Consequently, the majority errs in focusing on the fact that Nilsen did not present himself to Nationwide for an examination under oath before commencing this action. In fact, by July 29, 1994, the date on which Nilsen's contract cause of action arose, Nationwide had not even requested an examination under oath. Indeed, it did not request such an examination until the "fall of 1994." Brief of Nationwide, at 9. This was well after the time Nilsen's contract cause of action against Nationwide had accrued.
The trial court correctly entered the summary judgment in favor of Nilsen on his breach-of-contract claim against Nationwide. Because the majority reverses that judgment and renders the judgment against Nilsen, I must respectfully dissent.
ALMON and KENNEDY, JJ., concur.

On Application for Rehearing
PER CURIAM.
APPLICATION OVERRULED.
HOOPER, C.J., and MADDOX, SEE, LYONS, and BROWN, JJ., concur.
HOUSTON, J., concurs in case no. 1962035 and dissents in case no. 1961955.
KENNEDY, COOK, and JOHNSTONE, JJ., dissent.
HOUSTON, Justice (concurring in case no. 1962035 and dissenting in case no. 1961955).
As to case no. 1961955, Nationwide Insurance Co. v. Nilsen, I would grant the rehearing, modify the opinion, and then reverse and remand. Therefore, I dissent from the overruling of the application for rehearing.
As to case no. 1962035, Nilsen v. Nationwide Insurance Co., I concur in overruling the application for rehearing.
NOTES
[1] Because of our resolution of this case, we do not address whether Nilsen failed to comply with a condition precedent by failing to provide information and documents regarding his financial status. Likewise, we need not address Nationwide's argument that it should have been permitted to amend its answer and its argument that the trial court improperly included pre-judgment interest in its damages award.