Job J. Akpan and Dalphne D. Akpan (collectively, "the Akpans") appeal from summary judgments entered in favor of Farmers Insurance Exchange, Inc. ("Farmers"), David M. Mangrum, GAB Robbins, Inc., and Matthew Jackson by the Madison Circuit Court. We affirm.
In 2001, the Akpans owned a convenience store. They obtained a policy of insurance from Farmers that insured, among other things, the real and personal property associated with their store against loss and damage. The coverage period began on March 13, 2001, and lasted until October 6, 2001.
The Akpans suffered losses because of burglary and vandalism at their store on three separate occasions: July 17, 2001; July 31, 2001; and August 1, 2001. The Akpans made claims for these losses under the insurance policy shortly after the losses occurred. At the time they made their claims, Farmers had not yet provided to the Akpans a copy of their insurance policy. Farmers did, however, provide to the Akpans a copy of their insurance policy in September 2001.[1]
Farmers contracted with GAB Robbins, Inc. ("Robbins"), to investigate and adjust the Akpans' claims. Matthew Jackson was the Robbins employee assigned the task of conducting the investigation. Although Farmers contracted with Robbins to investigate and adjust the Akpans' claims, Farmers maintained the right to determine coverage under the policy.
The policy of insurance provided several conditions to the Akpans' recovery for *Page 867 
their losses. One of those conditions was that the Akpans submit to an examination under oath if requested by Farmers. In this regard, the policy stated:
E. LOSS CONDITIONS
 The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.
 ". . . .
 "3. Duties In The Event Of Loss Or Damage
 ". . . .
 b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed."
On five separate occasions in the latter half of 2002, Farmers, through an attorney, scheduled the Akpans to appear for examinations under oath.[2] The Akpans failed to appear for their examinations on any of these occasions, despite the fact that Farmers' attorney, at least initially, coordinated the dates for the examinations with the Akpans' attorney. The Akpans never submitted to an examination under oath as Farmers had requested.
The Akpans filed the present action on March 31, 2005, against Farmers, Mangrum (the Farmers insurance agent who sold the policy to the Akpans), Robbins, and Jackson (collectively, "the defendants"). The Akpans alleged that the defendants had breached the insurance contract, had acted in bad faith with regard to the handling and disposition of the Akpans' claims, had committed professional negligence in failing to obtain full and adequate insurance for the Akpans and in failing to properly investigate and resolve the Akpans' claims, and had committed fraud by failing to disclose material information to the Akpans.
On May 6, 2005, Farmers and Mangrum filed a motion to dismiss the action for failure to state a claim. They asserted that the Akpans were not entitled to recover under the insurance contract because the Akpans had failed to submit to the examinations under oath that Farmers had sought from them, thus violating a condition precedent to coverage under the policy. They supported their motion with an affidavit from the attorney who had attempted to schedule the Akpans' examinations under oath on Farmers's behalf and with a copy of the insurance policy. On the same day, Farmers and Mangrum filed a motion for a protective order allowing them to not respond to the discovery requests that the Akpans had served on them until the court ruled on the motion to dismiss.
On May 17, 2005, the Akpans filed a response to Farmers's and Mangrum's motion to dismiss. The Akpans argued that, because they were not provided with a copy of their insurance policybefore they made claims on the policy, "they had no idea what the duties and responsibilities were" under the policy. They asserted that Farmers failed to provide them with a copy of their policy in a timely manner in violation of Ala. Code 1975, §27-14-19(a). That statute provides that "every policy shall be mailed or delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance. . . ." *Page 868 
The Akpans also filed on May 17, 2005, an opposition to the motion for protective order and a motion to compel discovery. They argued that Alabama law provides a permissive discovery standard with regard to fraud and bad-faith claims, and that they were in need of the claims file Farmers had generated regarding the Akpans' claims on the insurance policy.
On May 26, 2005, the Akpans submitted an affidavit, executed by Job Akpan, which stated in pertinent part:
 "We had a policy of insurance with the Farmers Insurance Exchange from the period March 13, 2001 until October 6, 2001, which covered us from certain losses, including burglary and vandalism regarding convenience stores that we owned in Huntsville. We were relatively new to operating such businesses and carrying insurance on them. However we knew insurance was important to protect us in the case of a loss and therefore we procured our insurance and paid our premiums diligently.
 "Unfortunately, we were never provided with a copy of the policy which we had in effect until after our claims were made regarding our losses suffered on July 17, 31, and August 1, 2001. Therefore, we had no idea what our rights and obligations were under the policy.
 "Moreover, we were never told that if we did not submit to an examination under oath that our claims would be summarily denied by Farmers. Had we known of this possibility, we would have submitted to the examinations under oath even though we were gravely concerned about how Farmers had failed to make us aware of our rights so far."
On June 14, 2005, following oral argument on Farmers's and Mangrum's motion to dismiss, the Akpans filed a second response to that motion. They argued that before an insurer can avoid coverage because of its insured's failure to cooperate in the investigations of the insured's claims under the insurance policy, the failure to cooperate must be material and substantial, and the failure must result in prejudice to the insurer. The Akpans argued that Farmers had not shown that their refusal to submit to examinations under oath constituted material and substantial failures of cooperation, nor had it shown that it had been prejudiced by the Akpans' actions. The Akpans also contended that whether an insured has breached the duty to cooperate is usually a question of fact.
On September 27, 2005, the trial court granted Farmers's and Mangrum's motion and entered a judgment in their favor. The order granting the motion stated, in pertinent part:
 "Because of the need for consideration of extraneous information outside of that contained in the pleadings, the Court has elected to treat the Motion to Dismiss as a Motion for Summary Judgment pursuant to Ala. R. Civ. P. 56.
 "The Court has considered the evidence presented by the parties including a copy of the subject insurance policy provided. It has noted that said policy requires the insureds to submit to an examination under oath `as may be reasonably required.' It is further undisputed that the Plaintiffs in this action, Job Akpan and Dalphne Akpan, were requested on numerous occasions to submit to such examinations under oath but failed to comply.
 "Pursuant to Nationwide Insurance Company v. Nilsen, 745 So.2d 264 (Ala. 1998), an insured's duty to submit to an examination under oath as required in an insurance policy is a condition precedent to his or her recovery under an insurance contract. Moreover, the Alabama Supreme Court determined that such an obligation was a `strict' condition *Page 869 
precedent. The Plaintiffs in this case have provided no case law indicating that mistake, confusion or lack of knowledge of such a strict condition negated their obligation to comply. Moreover, they have failed to demonstrate that any additional discovery would materially affect the outcome of this case. Accordingly, this Court finds that no genuine issue of material fact exists in this case and that the Defendants, David Mangrum and Farmers Insurance Exchange, Inc. are entitled to a judgment as a matter of law."
The Akpans filed a motion to reconsider on October 5, 2005.
On October 11, 2005, Robbins and Jackson filed a motion for a summary judgment. They argued that they could not be held liable for breach of contract or bad faith, the first two counts in the Akpans' complaint, because they were not parties to the insurance contract between the Akpans and Farmers. As to the Akpans' fraud count, Robbins and Jackson argued that the Akpans "failed to meet any of the elements required to prevail on a fraud claim," which Robbins and Jackson correctly noted to be a false statement of a material fact upon which the plaintiff reasonably relied and was thereby damaged. Robbins and Jackson also argued that the Akpans had failed to plead their fraud count with the requisite specificity. As to the Akpans' professional-negligence count, Robbins and Jackson argued that, under Alabama law, only health-care and legal-services providers are subject to a claim of professional negligence, and, as a result, they could not be liable under that count. At the subsequent hearing on the motion, Robbins and Jackson also asserted that they did not owe the Akpans a duty with regard to the investigation that Robbins was hired by Farmers to perform, as Robbins's contractual relationship was with Farmers alone, and, as a result, its and Jackson's duty ran solely to Farmers.
On October 12, 2005, Farmers and Mangrum filed a response to the Akpans' motion to reconsider to which they attached copies of two letters that counsel for Farmers had sent to the Akpans in 2002, demanding their appearance at examinations under oath. In both of these letters, Farmers's attorney indicated to the Akpans that their failure to submit to the requested examinations could result in the loss of policy benefits and quoted the portion of the insurance policy indicating the Akpans' duty to submit to examinations under oath.
On November 4, 2005, the Akpans filed a reply to Fanners' and Mangrum's response to the motion to reconsider. The Akpans reiterated a number of the arguments they had made in their previous filings and, in addition, argued that if Farmers did not deliver a copy of the insurance policy to the Akpans until after the Akpans filed their claims on the policy in 2001, Farmers was estopped from enforcing the conditions precedent to coverage under the policy.
Also on November 4, 2005, the Akpans filed a response to Robbins's and Jackson's motion for a summary judgment. The Akpans argued that a summary judgment would be premature because discovery requests they had served on Robbins and Jackson remained unanswered.
On December 30, 2005, the trial court denied the Akpans' motion to reconsider, which it had treated as a motion to alter, amend, or vacate the judgment pursuant to Rule 59, Ala. R. Civ. P., and granted Robbins's and Jackson's motion for a summary judgment. Pursuant to the Akpans' counsel's stipulation at the oral argument on the motions, the court dismissed the breach-of-contract and bad-faith counts against Robbins and Jackson. The court *Page 870 
found that there were no genuine issues of material fact as to the fraud and professional negligence claims against Robbins and Jackson and held that Robbins and Jackson were entitled to a judgment as a matter of law. The Akpans appealed to the Supreme Court, which transferred the appeal to this court pursuant to Ala. Code 1975, § 12-2-7(6).
We review the entry of a summary judgment de novo, applying the same standard that the trial court applied. McClendon v.Mountain Top Indoor Flea Market, Inc., 601 So.2d 957, 958
(Ala. 1992). In Capital Alliance Ins. Co. v. Thorough-Clean,Inc., 639 So.2d 1349 (Ala. 1994), our Supreme Court articulated the summary-judgment standard:
 "A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present `substantial evidence' creating a genuine issue of material fact — `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Ala. Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)."
Capital Alliance Ins. Co., 639 So.2d at 1350.
The Akpans contend that the trial court erred when it entered a summary judgment in favor of Farmers and Mangrum because a genuine issue of material fact existed with regard to the timeliness of the delivery of a copy of the Akpans' insurance policy to them. They argue that if Farmers and Mangrum, its agent, did not provide the Akpans with a copy of their insurance policy before they filed their claims under the policy in 2001, Farmers and Mangrum were not entitled to deny coverage under the policy on the basis that the Akpans failed to submit to examinations under oath. They point out that § 27-14-19, Ala.Code. 1975, requires an insurance company to deliver an insured's policy to the insured in a timely manner, and that, in the present case, whether Farmers and Mangrum did so is in dispute.[3]
In support of its contention, the Akpans rely on Clarke v.Allstate Ins. Co., 728 So.2d 135 (Ala. 1998). InClarke, the insureds' had a policy of automobile insurance that began in 1987. In 1995, the insureds' car was stolen and the insureds filed a proof of loss with the insurance company. A few weeks later, the insureds found the car abandoned in a parking lot. The insureds filed a second proof of loss with the insurance company, claiming that the car had been damaged during the time it was stolen. The insurance company requested that the insureds appear for an examination under oath. The insureds did not appear for the examination, nor did *Page 871 
they appear at two subsequently-scheduled examinations. The insurance company did not pay the insureds' claim.
The insureds filed suit against the insurance company. The insurance company sought a summary judgment against the insureds on the basis that the insureds had breached the insurance contract by refusing to be examined under oath, and, as a result, they could not maintain an action for breach of the insurance contract. The insurance company relied on a policy endorsement that it claimed was added to the insureds' insurance contract in 1992. That endorsement provided that the insurance company, when investigating a claim, could require the insured making the claim to submit to an examination under oath.
In response to the insurance company's motion for a summary judgment, one of the insureds submitted an affidavit indicating that the insureds never received a copy or had knowledge of the endorsement upon which the insurance company relied. The insured indicated in her affidavit that the insureds' first knowledge of the endorsement was when the insurance company filed its motion for a summary judgment. The trial court granted a summary judgment in the insurance company's favor.
On appeal, our Supreme Court held that the insured's "denial of the receipt of the endorsement, together with [the insurance company]'s failure to assert that it had mailed or delivered it, leaves a fact question as to whether the endorsement was delivered and was thereby made a part of the policy through compliance with § 27-14-19(a)." Clarke,728 So.2d at 140. The Court relied, in part, on its holding in BrownMachine Works Supply Co. v. Insurance Co. of NorthAmerica, 659 So.2d 51 (Ala. 1995), where, in answering a question that the United States District Court for the Middle District of Alabama had certified to it, it had held that "an insurer may be estopped from asserting conditions of, or exclusions from, coverage where such a purchaser or insured is prejudiced by the insurer's failure to comply with [§ 27-14-19]." Brown Machine Works Supply Co.,659 So.2d at 61. The Court concluded that the unresolved fact question regarding whether the endorsement had been delivered to the insureds and, therefore, whether it had become a part of the insurance contract, rendered the summary judgment inappropriate.Clarke, 728 So.2d at 141.
The present case does not present a situation like that inClarke. In Clarke, the insureds did not receive the portion of the insurance policy informing them of their duty to submit to examinations under oath until after they had been called upon, but they had refused, to submit to such examinations, and their insurance claim had been denied as a consequence. In this case, the Akpans received a copy of their insurance policy in September 2001, more than ten months before Farmers requested that they submit to the examinations under oath for which their insurance policy provided. Thus, unlike the insureds in Clarke, the Akpans were in possession of their insurance policy, and the loss conditions provided therein, well before they were called upon to fulfill those conditions.
The difference between the two cases is highlighted by theClarke Court's reliance on Brown Machine Works.
As noted above, the Court in Brown Machine Works held that an insurance company failing to comply with § 27-14-19's requirement of timely delivery of a copy of an insurance policy can be estopped from asserting conditions and exclusions appearing in the policy when the insured is prejudiced by the insurance company's noncompliance with that statute.Brown Machine Works Supply Co., 659 So.2d at 61. In Clarke, *Page 872 
the prejudice to the insureds from the failure of the insurance company to deliver the endorsement was plain: they did not learn of their duty to submit to examinations under oath until after the insurance company denied their claim.
In the present case, given the Akpans' possession of their insurance policy before being asked to submit to examinations under oath, we fail to understand how the Akpans were prejudiced by their failure to receive their insurance policy before they filed their claims. The fact that the Akpans did not receive a copy of their insurance policy before they filed their claims under the policy is immaterial and is ineffective to render the summary judgment in Farmers's and Mangrum's favor inappropriate.
Our affirmance of the trial court's summary judgment in Farmers' and Mangrum's favor finds additional support in our Supreme Court's decision in Nationwide Insurance Co. v. Nilsen,745 So.2d 264 (Ala. 1998), upon which the trial court relied. InNilsen, our Supreme Court stated:
 "We agree with Nationwide [ (the insurance company) ] that Nilsen [ (the insured) ] failed to comply with a condition precedent — that he submit to an examination under oath. Only after complying with that condition could he recover under the insurance contract. Therefore, we conclude that Nationwide was entitled to a judgment as a matter of law on Nilsen's breach of contract claim.
 ". . . .
 "We agree with Nationwide that Nilsen's insurance policy established, as a strict condition precedent to Nation wide's liability under the contract, that Nilsen submit to an examination under oath. An insurance company is entitled to require an insured to submit to an examination under oath as part of its claims investigation process. . . . Moreover, an insurer's obligation to pay or to evaluate the validity of an insured's claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims."
Nilsen, 745 So.2d at 266-67. Clearly, Farmers could not be held to have violated a contractual obligation to pay the Akpans' claims when the Akpans had "failed to comply with a condition precedent" to recovery under their insurance contract.[4]
The Akpans next contend that the trial court erred when it entered a summary judgment in favor of Robbins and Jackson on the Akpans' negligence claim. They contend that Robbins and Jackson were not entitled to a summary judgment based on their argument that Alabama does not recognize a cause of action against it for "professional negligence" in the context of this action. The Akpans argue that, in spite of the fact that they titled the count "professional negligence," the complaint clearly sets forth the elements of a common-law cause of action for negligence and that the count should be treated as such.
Robbins and Jackson actually set forth a second basis upon which they believed they were due a summary judgment. Specifically, they argued that, as an adjuster and investigator hired by Farmers, they did not owe a duty to the Akpans, thus negating one of the elements of negligence. *Page 873 
We agree and affirm the trial court's judgment on that basis.
"`The existence of a duty to the plaintiff is fundamental to a negligence claim.'" Patrick v. Union State Bank,681 So.2d 1364, 1367 (Ala. 1996) (quoting Graveman v. Wind DriftOwners' Ass'n, Inc., 607 So.2d 199, 203 (Ala. 1992)). "Whether a legal duty exists is a question of law." Id.
at 1368. "In determining whether a duty exists, the courts consider factors including public policy; social considerations; foreseeability; the nature of the defendant's activity; the relationship between the parties; and the type of possible injury or harm." Key v. Compass Bank, Inc., 826 So.2d 159, 170
(Ala.Civ.App. 2001).
Whether an independent adjuster or investigator with whom an insurance company contracts for the investigation and adjustment of a claim owes a duty to the insured is a question of first impression in Alabama. As indicated below, the majority of courts from other jurisdictions that have addressed this issue have found that such an adjuster or investigator owes a duty only to the insurance company that hired it.
In Meineke v. GAB Business Servs., Inc., 195 Ariz. 564,991 P.2d 267 (Ct.App. 1999), the plaintiffs made a claim under their homeowners insurance policy after a fire destroyed their house. The insurance company contracted with an independent company to investigate the plaintiffs' claim. The plaintiffs disagreed with the insurance company's ultimate disposition of their claim and brought suit against the insurance company and the independent company that investigated their claim. In a summary-judgment motion, the investigating company argued that it did not owe a duty to the plaintiffs, and, as a result, could not be liable for negligence. The trial court granted the motion and entered a judgment in the company's favor.
The Arizona Court of Appeals affirmed the summary judgment in favor of the investigating company, stating:
 "¶ 15 We conclude that the relationship between adjuster and insured is sufficiently attenuated by the insurer's control over the adjuster to be an important factor that militates against imposing a further duty on the adjuster to the insured. . . .
 "¶ 16 More important, . . . imposing a duty on the adjuster in these circumstances would work a fundamental change in the law. The law of agency requires a duty of absolute loyalty of the adjuster to its employer, the insurer. . . . The independent adjuster's obligation is measured by the contract between the adjuster and the insurer. The adjuster that contracts to perform a $200 investigation is not obligated to expend the same effort that might be reasonable for a fee of $2000, nor is it obligated to continue when the insurer advises it to stop. Creating a separate duty from the adjuster to the insured would thrust the adjuster into what could be an irreconcilable conflict between such duty and the adjuster's contractual duty to follow the instructions of its client, the insurer."
Meineke, 195 Ariz. at 567-68, 991 P.2d at 270-71. Seealso, e.g., Sanchez v. Lindsey Morden Claims Servs.,Inc., 84 Cal. Rptr.2d 799, 801-04, 72 Cal.App.4th 249,253-56 (1999) (holding that to impose a duty on the adjuster to the insured would conflict with the duty the adjuster owes the insurer that hired it)[5]; King v. National *Page 874 Sec. Fire and Cos. Co., 656 So.2d 1338, 1339
(Fla.Dist.Ct.App. 1995); Velastequi v. Exchange Ins. Co.,132 Misc.2d 896. 898-99, 505 N.Y.S.2d 779, 781-82 (Civ.Ct. 1986) ("[A] duty directly assumed for the benefit of a particular person or entity does not extend to third parties who were not intended beneficiaries of the subject undertaking."); Koch v.Bell, Lewis Associates, Inc.,176 N.C.App. 736, 740, 627 S.E.2d 636, 638-39 (2006) (holding that to impose a duty on the adjuster to the insured would subject the adjuster to conflicting loyalties); Charleston Dry Cleavers Laundry, Inc. v. Zurich American Ins. Co., 355 S.C. 614,618-19, 586 S.E.2d 586, 588-89 (2003) (declining "to recognize a general duty of due care from an independent insurance adjuster or insurance adjusting company to the insured, and thereby align[ing] South Carolina with the majority rule on this issue");Dear v. Scottsdale Ins. Co., 947 S.W.2d 908, 916-17
(Tex.App. 1997).[6]
Having reviewed the foregoing cases and the rationales employed therein, we agree with those courts that have refused to find that an independent adjustor or investigator that was hired by an insurance company to investigate or adjust the claim of one of its insureds owes a duty to the insured. Thus, we affirm the trial court's entry of a summary judgment in Robbins's and Jackson's favor on the Akpans' negligence claim.
The Akpans next contend that summary judgment in Robbins's and Jackson's favor on the Akpan's fraud claim was improper because, they argue, Robbins and Jackson failed to carry their burden of making a prima facie showing that they were entitled to a summary judgment. Although Robbins and Jackson contended to the trial court that they did not make any *Page 875 
representations to the Akpans regarding the Akpans' claims or regarding coverage for those claims, the Akpans argue that Robbins and Jackson failed to support those contentions with substantial evidence. Thus, the Akpans argue, the burden never shifted to the Akpans to come forward with substantial evidence creating a genuine issue of material fact.
The Akpans' argument is without merit. It was the Akpans who had the burden of proof at trial as to the elements of their fraud claim, including whether Robbins and Jackson made the above-referenced representations to them. When the basis of a summary-judgment motion is a failure of the nonmovant'sevidence, the movant's burden as to the summary-judgment motion is limited to informing the court of the basis of its motion — that is, the moving party must indicate where the nonmoving party's case suffers an evidentiary failure. See Exparte General Motors Corp., 769 So.2d 903, 906-09 (Ala. 1999). Here, Robbins and Jackson did that. They informed the court that the Akpans' case suffered from an evidentiary failure. In order to survive Robbins's and Jackson's summary judgment motion, it then became incumbent on the Akpans to remedy their evidentiary failure; they did not, and summary judgment against them was appropriate.
Finally, the Akpans contend that the summary judgments were inappropriate because the defendants did not respond to the Akpans' discovery requests. The Akpans argue that their discovery requests sought information crucial to their case. They argue that it was error for the trial court to enter the summary judgments when their motion to compel discovery from Farmers and Mangrum remained pending.
In Reeves v. Porter, 521 So.2d 963 (Ala. 1988), our Supreme Court set forth the applicable law regarding the entry of a summary judgment when discovery requests remain pending:
 "The mere pendency of discovery does not bar summary judgment. If the trial court from the evidence before it, or the appellate court from the record, can as-certain that the matter subject to production was crucial to the non-moving party's case . . . or that the answers to the interrogatories were crucial to the non-moving party's case . . ., then it is error for the trial court to grant summary judgment before the items have been produced or the answers given. However, the burden of showing that these items are crucial is upon the non-moving party. He can do so by complying with Rule 56(f), Ala. R. Civ. P Rule 56(f) provides: `Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.' A pending motion to compel production . . . and a motion to compel answers to interrogatories, which has been granted . . . when the evidence before the court clearly shows that the evidence sought is crucial to the non-moving party's case, have been held sufficient compliance with Rule 56(f). However, when no such crucial evidence would be supplied by the production or by the answers to the interrogatories, it is not error for the trial court to grant summary judgment with discovery pending."
Reeves, 521 So.2d at 965 (emphasis added).
In an attempt to demonstrate that the discovery responses and items they sought are crucial to their case, the Akpans argue *Page 876 
that Farmers's and Robbins's claims files, which they sought in their discovery requests, would have provided information regarding when Farmers mailed the insurance policy to the Akpans and whether Farmers violated § 27-14-19 in its delivery of the policy. This information was not crucial to their case, however, because the record already discloses when the Akpans received a copy of their insurance policy, and, as discussed above, the timing of their receipt of the policy does not give rise to a claim against Farmers.
The Akpans also assert that production of the claims files would have established that they paid the premiums required under the insurance policy, but that Farmers did not pay the Akpans' claims. These facts are uncontroverted, however. Given our analysis of the other issues raised in this case, we fail to see how discovery responses that supported these uncontroverted facts would have had any bearing on the defendants' entitlement to summary judgment.
The Akpans also argue that production of the claims files would have revealed whether the defendants thoroughly investigated the Akpans' claims or, instead, acted in bad faith in the investigation of their claims. We conclude that this information was also not crucial to the Akpans' claims. Because Farmers and Mangrum could not be held liable for breach of contract for the reasons previously discussed, they could not be liable for bad faith as a matter of law. Auto-Owners Ins. Co. v.Abston, 822 So.2d 1187, 1193 (Ala. 2001) (citing Koch v.State Farm Fire Cas. Co., 565 So.2d 226, 231 (Ala. 1990)). Counsel for the Akpans admitted that the Akpans had no claim for bad faith against Robbins and Jackson.
We conclude that the trial court did not err when it entered the summary judgments in spite of the Akpans' pending discovery requests. See Reeves, 521 So.2d at 965.[7]
Based on the foregoing, the judgment of the trial court in favor of Farmers, Mangrum, Robbins, and Jackson is due to be affirmed.
AFFIRMED.
CRAWLEY, P.J., and THOMPSON, PITTMAN, and BRYAN, JJ., concur.
[1] The fact that the Akpans received a copy of their insurance policy in September 2001 was stated in open court by counsel for the Akpans.
[2] The examinations under oath were scheduled on August 2, 2002; August 22, 2002; September 11, 2002; October 10, 2002; and November 12, 2002.
[3] Section 27-14-19(a), Ala. Code 1975, slates:
 "Subject to the insurer's requirements as to payment of premium, every policy shall be mailed or delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance, except where a condition required by the insurer has not been met by the insured."
[4] In their brief, the Akpans present additional arguments concerning their general duty to cooperate with Farmers' investigation and whether Farmers' failure to provide the Akpans with a copy of the insurance policy before they filed their claims should constitute an estoppel. In light of the above-cited authorities, we find these additional arguments to be without merit.
[5] The court in Sanchez also set forth many of the policy reasons militating against recognition of a duty on the part of the adjuster to the insured:
 "[T]he insurer-retained adjuster is subject to the control of its clients, and must make discretionary judgment calls. The insurer. not the adjuster, has the ultimate power to grant or deny coverage, and to pay the claim, delay paying it, or deny it. Further, while the insurer's potential liability is circumscribed by the policy limits, and the other conditions, limits and exclusions of the policy, the adjuster has no contract with the insured and would face liability without the chance to limit its exposure by contract. Thus the adjuster's role in the claims process is `secondary,' yet imposing a duty of care could expose him to liability greater than faced by his principal the insured.
 "Imposing a duty would also subject the adjuster to conflicting loyalties. Insurers and insureds often disagree as to coverage or the amount of loss. An adjuster cannot argue both sides of such disputes, any more than a lawyer can represent opposite sides in a lawsuit. An adjuster owes a duty to the insurer who engaged him. A new duty to the insured would conflict with that duty. and interfere with its faithful performance.
 ". . . .
 "Insurance is a highly uncertain and risky endeavor, because it requires accurate predictions about the occurrence and cost of future events. Insurers are able to define and limit the risks, and to set premium levels commensurate with the risks, using complex and nuanced contracts (policies). By contrast, adjusters hired by insurers have no contract with insureds, and thus no ability to define or circumscribe their potential risks or liabilities to insureds. If adjusters faced negligence liability to insureds, market forces would tend to drive adjusting activities in-house, where they could be shielded with contractual exclusions, disclaimers, and limitations. Thus, imposing a duty would reduce, perhaps severely, the offering of independent adjuster services. Yet widespread market acceptance has shown these services to be useful and desirable."
Sanchez. 84 Cal.Rptr.2d at 801-02,72 Cal. App.4th at 253-54.
[6] But see Continental Ins. Co. v. Bayless and Roberts,Inc. 608 P.2d 281, 287-88 (Alaska 1980); Morvay v.Hanover Ins. Cos., 127 N.H. 723. 724-27, 506 A.2d 333,334-35 (N.H. 1986), Brown v. State Farm Fire and Cas. Co.,58 P.3d 217, 219-23 (Okla.Civ.App. 2002).
[7] In their brief to this court, the Akpans briefly assert several other purported reasons that discovery responses were crucial to this case. We have carefully considered each of them and find them to be without merit.