SHAW, Justice
(concurring specially).
I concur in the main opinion. I write specially to discuss the issue whether Blythe Insurance Agency had apparent authority to receive notice for The North River Insurance Company. This issue was not raised in the trial court and is not raised by Allen M. Overton and Cindy Waldrop as an argument on which to affirm the trial court’s judgment on appeal.[8] That said, this Court “can affirm the trial court ‘on any ground developed in, and supported by, the record.’” Lyons v. River Road Constr., Inc., 858 So.2d 257, 265 (Ala.2003) (quoting Ex parte Ramsay, 829 So.2d 146, 155 (Ala.2002)).
Apparent authority is referenced in Ballard v. Lee, 671 So.2d 1368 (Ala.1995), a decision upon which the main opinion relies. Apparent authority “ ‘rests upon the principle of estoppel, which forbids one by his acts to give another an appearance of authority which he does not have and to benefit from such misleading conduct to the detriment of one who has acted in reliance upon such appearance.’” McLemore v. Hyundai Motor Mfg. Alabama, LLC, 7 So.3d 318, 329 (Ala.2008) (quoting Patterson v. Page Aircraft Maint., Inc., 51 Ala.App. 122, 125-26, 283 So.2d 433, 436 (1973)). See also Union Oil Co. v. Crane, 288 Ala. 173, 178, 258 So.2d 882, 885-86 (1972) (“‘“When one has reasonably and in good faith been led to believe ... that a certain agency exists, and in good faith acts on such belief to his prejudice, the principal is estopped from denying such agency.” Halle v. Brooks, 209 Ala. 486, 487, 96 So. 341, 342 [(1923)].’” (quoting Pearson v. Agricultural Ins. Co., 247 Ala. 485, 488, 25 So.2d 164, 167 (1946))). To demonstrate apparent authority, “the insured or other person asserting it ... must have been misled into altering his or her position to his or her prejudice.” 3 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 48:13 (3d ed. 2005) (footnotes omitted; emphasis added). The argument, if it had been raised by Overton and Waldrop, would be thus: The designation in the policy of Blythe as an “agent” was misleading conduct by North River causing Overton and Waldrop to reasonably and in good faith believe that there *14 was an agency relationship — at least for purposes of giving notice of a claim — and that North River benefited from such misleading conduct to the detriment of Over-ton and Waldrop, who reasonably and in good faith altered their position and acted in reliance upon such appearance to their prejudice.
The standard of review of a summary judgment requires this Court “to view the evidence in a light most favorable to the nonmoving party” — here North River— and “to draw all reasonable inferences” in its favor. Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala.1994). Given this standard, it is unclear from the current state of the record whether North River actually listed Blythe as “agent” on the policy issued to Prince Family Housing, Inc. There are several identical copies of the policy in the record.[9] They are not “countersigned” by an “Authorized Representative” on the “Common Policy Declarations” page, which another portion of the policy requires for the policy to be “valid.” Further, Phillip Blythe testified that the copy viewed at his deposition was the “application” or “agent’s copy” and “not actually a copy of the actual insured’s policy.” Additionally, the policy is made up of several different documents, some of which are standardized forms and some of which have portions that appear to have been completed with information — such as Prince’s and Blythe’s names and addresses — at a different time or with different printing equipment. It is unclear whether North River, Acordia, or Blythe generated portions of the documentation. Although it is reasonable to infer that North River drafted these documents, or even specifically completed the information indicating Blythe as an “agent,” the standard of review requires inferences to be drawn in North River’s favor, not against it.[10]
Additionally, it is unclear how North River benefited from the allegedly misleading statement, which was made to Prince, a party to the policy that knew the proper notice procedure.[11] It is also unclear upon what basis we can hold as a matter of law that Overton and Waldrop relied on North River’s purported conduct, because they were under no legal duty to forward a copy of the motion seeking a default judgment and the counterclaim to North River, a nonparty to the action. Instead, the duty to give notice was on Prince, and Overton and Waldrop had not yet stepped into Prince’s shoes as garnish-ors. See Kennedy v. Western Sizzlin Corp., 857 So.2d 71, 78 n. 3 (Ala.2003) (affirming a summary judgment against parties alleging apparent authority, noting that the parties “do not allege, or offer any evidence indicating, that they relied to their prejudice on their alleged understanding that [the purported principal and agent] were ‘one in the same,’” and further noting that there was no evidence indicating that the purported principal permitted the appearance of authority justifying such reliance). Finally, it is unclear how Overton and Waldrop altered their position in reliance on the representation in the policy. It thus appears that, at most, there are possible issues of fact as to whether notice to Blythe constituted notice to North River under the doctrine of ap *15 parent authority; such issues of fact áre more properly addressed on remand and preclude an affirmance of the summary judgment.
Further, although this Court can generally affirm a trial court’s judgment for any reason developed in the trial court and supported by the record, we will not apply this rule “where due-process constraints require some notice at the trial level, which was omitted, of the basis that would otherwise support an affirmance.” Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1020 (Ala.2003). Here, North River did not have notice of this issue in the trial court; thus, it has not had the opportunity to argue that Overton and Waldrop have not produced prima facie evidence of reliance or that Overton and Waldrop could not rely on representations made in a contractual arrangement to which they were strangers. Also, North River has not had the chance to ’submit evidence demonstrating that it did not place Blythe’s name on the policy or to demonstrate that it did not benefit from purportedly indicating to . Prince that Blythe was the “agent.” ,
Therefore, I believe that this issue is better left to be properly developed and resolved in the trial court on remand.[12]

. There is an oblique reference to apparent authority in a parenthetical citation to a Georgia decision in a footnote in Overton and Waldrop’s brief to this Court; however, there is no argument on this point and no citation to the voluminous Alabama caselaw on this doctrine.

. It appears that the existence of the insurance policy was discovered during the course of the Merit Bank litigation.

. Further, as noted in the main opinion, "agent” could refer to the apparent fact that Blythe acted as Prince's agent in the role of a broker. 59 So.3d at 12.

.Phillip Blythe testified that Blythe's clients are instructed to give notice of claims to Blythe, which would in turn be forwarded to the insurer, and that Prince would have been informed of this procedure.

. Further, I note the possibility that Overton and Waldrop place little emphasis on this argument for strategic reasons. Specifically, the policy limits the amount of coverage to $1 million. Overton and Waldrop, however, contend that North River is required to pay the full $5 million in damages awarded by the trial court because it intentionally refused to defend Prince and, under Alabama law, Over-ton and Waldrop argue, North River is thus prevented from raising the policy limits as a defense to paying the full amount of the judgment. To concede that Blythe had no actual authority or agency in this case, and instead argue that it had apparent authority, Overton and Waldrop may be required to abandon the theory that North River intentionally refused to provide a defense. Thus, to maximize recovery from North River, it is to Overton and Waldrop's advantage to intentionally disregard an argument on apparent authority.